E. DAVID PETERSON v. C. A. HALVORSON.[1]

June 11, 1937.

No. 31,289.

*William S. Ervin,* Attorney General, and *Louis F. Soukup,* Special Assistant Attorney General, for relator.

*Reynolds & McLeod,* for respondent.

JULIUS J. OLSON, JUSTICE.

The state treasurer as custodian of the special compensation fund created pursuant to the provisions of 1 Mason Minn. St. 1927, § 4276, seeks review and reversal, by means of *certiorari,* of an order

[1]Reported in 273 N. W. 812.

of the industrial commission allowing petitioner-respondent compensation from that fund.

The facts were stipulated, and the commission has found them to be as thus stipulated. Summarizing these we have: Petitioner is a married man, 68 years of age, and has been employed by the Minnesota Tribune Company continually from some time prior to the year 1902 to and including November 13, 1935. While thus employed in 1902 he received an accidental injury as a result of which all four fingers and a part of the palm of his left hand were lost. After that injury he resumed his employment for the same employer and received another injury in 1904, also in the course of his employment, causing the loss of his right arm. But he still continued working for this employer until and including November 13, 1935, when he received his third injury, a 50 per cent loss of the thumb of his left hand. This last injury, coupled with those theretofore suffered, brought about total and permanent disability. At the time of his last injury he was receiving a weekly wage of $42. Pursuant to the compensation act, he has received from his employer on account of that injury $736.67, the payments thereunder ending July 27, 1936.

Being of the view that his case was one coming within the provisions of 1 Mason Minn. St. 1927, § 4276, he brought proceedings thereunder. There is no doubt that the last injury was the one that caused, because of the injuries he received in 1902 and 1904, total and permanent disability. The question presented by the custodian is stated in substance thus: That the decision of the commission "is not in conformity with the provisions of the workmen's compensation act and particularly" that the conclusion reached by the commission is erroneous in that the section to which we have referred "does not contemplate the payment of compensation from the special fund provided for therein when, as in this case, both the previous disability and the subsequent partial disability are due to industrial accidents sustained by an employe in the course of his continuous employment with the same employer." The mentioned section as far as here material reads:

"If an employe receive an injury, which of itself, would only cause permanent partial disability, but which combined with a previous disability does in fact cause permanent total disability, the employer shall only be liable for the permanent partial disability caused by the subsequent injury.

"Provided, however, that in addition to compensation for such permanent partial disability and after the cessation of the payments for the prescribed period of weeks, the employe shall be paid by the state the remainder of the compensation that would be due for permanent total disability, out of a special fund known as the Special Compensation Fund, and created for such purpose in the following manner:" (The remaining portions of the section need not be quoted, as the same relate to the manner of establishing the fund and its administration.)

■ The first quoted paragraph of the section is all that was originally enacted when the compensation law was adopted in 1913. While the law was in that shape this court, in State ex rel. Garwin v. District Court, 129 Minn. 156, 151 N. W. 910, 911, had occasion to construe its purpose and effect. In that case the employe when entering the service of J. Neils Lumber Company had but one eye, the other having been lost theretofore by accidental means. While so employed by that company he sustained an injury to his other eye causing its loss, thus rendering him wholly blind and consequently totally and permanently disabled. He sought recovery against the lumber company as for total and permanent disability. The court allowed compensation only for the eye lost in the service of the last employer. This court in so holding said (129 Minn. 158-159):

"The liability created is founded upon no wrong of the employer, * * *. The employer accepts in his service a disabled employee, knowing of the disability and with the knowledge that under the compensation statute he is liable for accidental injuries to such employee while engaged in his service, but to couple the prior disability with one suffered while in his service and make the employer liable for both, would seem a hardship the legislature intended to avoid.

At least we think the language of the statute clearly manifests that intention. The statute is too plain to admit of any other view, and there is no room for judicial construction. * * * And though the statute is remedial in the broadest sense of the term, to be liberally construed, the court is without power or authority to change the plain language thereof by construing it to mean the reverse of what is clearly stated therein."

■ The legislature undoubtedly recognized the gross injustice suffered by a laboring man under such circumstances, and as a consequence L. 1921, c. 82, § 16, was enacted, and thereby, amongst other things, the legislature made provision for the creation of the special compensation fund out of which it was designed compensation should be met under conditions such as here are found to exist. The legislative intent is clear; hence there is no room for construction.

"A statute is to be enforced literally as it reads, if its language embodies a definite meaning which involves no absurdity or contradiction. In such a case the statute is its own best expositor." 6 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 8938, and cases cited under notes 2 and 3.

The second quoted paragraph came, as we have seen, into this section (4276) by virtue of the 1921 act, and was considered and construed in Lehman v. Schmahl, 179 Minn. 388, 229 N. W. 553, 554, where this court sustained recovery from that fund. Briefly the facts were: The injured workman had become totally disabled by reason of injuries suffered, which, added to organic disease, rendered him totally and permanently disabled. Judge Taylor in that opinion adequately stated the reasons of the court for the conclusion reached, and they need not here be reiterated. See particularly last paragraph of opinion, 179 Minn. 391-392. There, as here, the employer had paid the obligation created by virtue of the provisions of the act for the particular injury received, the compensation fund being resorted to and used to provide the difference.

■ Relator does not question the purpose of the act as applied to an employe who receives the final disabling injury from an em-

ployer other than the one who was such when the prior injuries were sustained, but contends that there is a difference in the legislative purpose between such case and the one here presented; in other words, that the particular industry in which the employe was engaged should singly and alone bear the entire burden, not this special fund. If we were to adopt this theory we should be compelled to read an important qualification into the law obviously not there as now written. By so construing the act the result would be to penalize an employer for taking a man back to work after the latter has sustained an accident resulting in some disability. Naturally that result would obtain to the detriment of reëmployment of injured workmen. If the last employer were to be held liable as for total and permanent disability under such circumstances, the result obviously would be to create a class of unemployables. The present workman by his capacity to rehabilitate and readjust himself has demonstrated that one who has been injured is still capable of rendering valuable service. After the accident of 1904, when his right arm was amputated and there was left of his left hand only the thumb and a part of the palm, most workmen, and employers as well, would consider further employment wholly impossible. Yet Mr. Peterson continued in his work over a period of more than 30 years, earning at the time of his last accident, as we have seen, $42 per week. If the employer were to be faced with the entire charge here resulting from the mere loss of the remaining thumb on Peterson's left hand, would it be reasonable to suppose that the employer would have kept him? Clearly such result as a matter of business prudence could not have obtained.

This worthy employe is entitled to look to this fund for the compensation provided by it. He has now gone past his sixty-eighth milestone. Naturally and necessarily his remaining years cannot be very many. The fund from which he is to be compensated comes from industries in general, not from any single employer, thus indicating a legislative purpose to charge this fund in cases of this type. The legislative intent is clear. We have no business to interfere. Cheerfully we sustain the result reached below; hence the

writ is discharged and order affirmed. Respondent is allowed $75 attorney's fees in addition to statutory costs and disbursements.

MR. JUSTICE PETERSON, having been of counsel when this case was argued and submitted, took no part in its consideration or decision.