**ANOKA–HENNEPIN EDUCATION AS-SOCIATION, Minnesota Education Association and Robert Marcotte, Respondents,**

v.

**ANOKA–HENNEPIN INDEPENDENT SCHOOL DISTRICT NO. 11 and Anoka-Hennepin Federation of Teachers, Appellants.**

No. 51084.

Supreme Court of Minnesota.

May 8, 1981.

Peterson, Popovich, Knutson & Flynn and James E. Knutson and Thomas S. Deans, St. Paul, Peterson, Engberg & Peterson and Bruce P. Grostephan, Minneapolis, for appellants.

Oppenheimer, Wolff, Foster, Shepard & Donnelly, Eric R. Miller and Donald W. Selzer, Jr., St. Paul, for respondents.

TODD, Justice.

Anoka-Hennepin Education Association (AHEA) is the exclusive representative of teachers in the Anoka-Hennepin Independent School District No. 11 (District). Anoka-Hennepin Federation of Teachers (AHFT) represents a minority of the teachers in the District. The District has been permitting an automatic payroll deduction of dues for AHEA and AHFT. AHEA brought an action challenging the authority of the District under applicable statutory provisions to permit dues check off [1] for AHFT, a minority association. The trial court held that the statute was clear and precluded District's practice of permitting dues check off for AHFT. We affirm.

The relevant stipulated facts may be summarized as follows:

    1. AHEA is a non-profit employee organization composed of teachers in the District and affiliated with MEA, a non-profit employee organization. Teachers in the District selected AHEA as their

---

1. "Dues check off" indicates a payroll procedure whereby a teacher instructs the school district to deduct dues from the teacher's pay- check automatically and remit such membership dues to the designated employee organization.

exclusive bargaining representative pursuant to the provisions of Minnesota's Public Employee Labor Relations Act of 1971 (PELRA).

2. AHEA and District entered into a collective bargaining agreement (Working Agreement) for the time period 1977–1979.

3. Prior to August 20, 1973, and as required by the 1971 version of Minn. Stat. § 179.65, subd. 5 and the contract between AHEA and District for the time period 1972–1974, District permitted dues check off for any employee organization that a teacher designated.

4. On August 20, 1973, District's School Board amended the Working Agreement at AHEA's request to read:

Teachers shall have the right to have their membership dues deducted for the Exclusive Representative on a payroll deduction plan.

5. For 3 contract periods (1974–75, 1975–77, and 1977–79), AHEA never requested to insert language in the Working Agreement to specifically restrict dues check off to AHEA. The relevant provision for all 3 periods stated:

"Teachers shall have the right to have their membership dues deducted for the Exclusive Representative on a payroll deduction plan. Upon receipt of a dues deduction authorization for a teacher, the District shall continue such deductions in succeeding years until notified by the Association to cease. In addition, all teachers as defined in PELRA–71 as amended who are not members of the Association may be required by said Association to contribute a fair share fee as defined in PELRA–71 as amended. The employer, upon notification by the Association of such employees shall be obligated to check off said fee from the earnings of the employee and transmit the same to the Association. The notification for 'fair share' fee must be given to the District at least thirty (30) calendar days before it will be implemented."

6. Moreover, AHEA never proposed to alter the provisions reprinted in paragraph 5 for the 1979–81 contract period.

7. AHFT made three requests to District from July 29, 1974, to February 8, 1978, asking District to permit dues check off for AHFT.

8. District failed to act on AHFT's first request and denied AHFT's second and third request.

9. On March 13, 1978, District's School Board (Board) requested a legal opinion from Board's attorney regarding dues check off. Board's attorney rendered an opinion indicating that:

[I]t is discretionary with the School District whether it wishes to deduct dues for a noncertified union.

10. AHFT is a noncertified minority union.

11. On or about September 22, 1978, District began dues check off for AHFT pursuant to Board's resolution authorizing dues check off for AHFT members.

The issue presented is whether Minn.Stat. § 179.65, subd. 5 (1980), prohibits check off of dues for minority teacher associations when an exclusive representative exists.

The relevant statute, Minn.Stat. § 179.65, subd. 5 (1980) provides:

*Public employees shall have the right to request and be allowed dues check off for the exclusive representative.* In the absence of an exclusive representative, public employees shall have the right to request and be allowed dues check off for the organization of their choice. [Emphasis added.]

The district court's order granting summary judgment in favor of AHEA contained a memorandum which stated:

It appears to the Court that this statute is completely clear and unambiguous and requires no interpretation. There is an exclusive representative. Therefore, none of the teachers have the right to request a check-off for some other organization. Since the legislation is clear and since the Court possesses no legislative power, the Court has no power to rule otherwise, nor can past conduct or con-

tracts of this or any other school district change the clear will of the Legislature.

We agree. Clearly, this court possesses the responsibility to interpret and construe uncertain language. However, no room for judicial construction exists when the statute speaks for itself. *Arlandson v. Humphrey,* 224 Minn. 49, 27 N.W.2d 819 (1947). Minn. Stat. § 645.16 (1980) codifies this principle and states in pertinent part that:

> When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit.

In *Peterson v. Halvorson,* 200 Minn. 253, 273 N.W. 812 (1937), this court refused to engage in statutory interpretation when the statute involved plainly manifested one view. The court stated:

> A statute is to be enforced literally as it reads, if its language embodies a definite meaning which involves no absurdity or contradiction. In such a case the statute is its own best expositor. 6 Dunnell, Minn.Dig. (2 ed. & Supps. 1932, 1934) § 8938, and cases cited under notes 2 and 3.

*Id.* at 256, 273 N.W. at 813.

The legislative intent in Minn.Stat. § 179.65, subd. 5 (1980), is quite specific. The language of a 1973 amending act reveals the strongest indication of legislative intent. Act of May 24, 1973, ch. 635, § 12, 1973 Minn.Laws 1526, 1529, provides:

> Public employees shall have the right to request and be allowed dues check off for the ~~employee organization of their selection, provided that dues check off and the proceeds thereof shall not be allowed any employee organization that has lost its right to dues check off pursuant to sections 179.64 to 179.75~~ <u>exclusive representative. In the absence of an exclusive representative, public employees shall have the right to request and be allowed dues check off for the organization of their choice</u>. [Changes indicated by <u>underline</u>, deletions by ~~strikeout~~.]

◼ Prior to this 1973 amendment, employees had the option of requesting dues check off for the employee association of their selection. The amended act allows employees to request dues check off for the exclusive representative only. We find no ambiguity in the statute. Any change for the benefit of minority employee association is appropriately a legislative decision.

We note that AHFT cites an opinion of the attorney general in support of its argument that the District may permit dues check off for minority employee associations. The pertinent portion of the attorney general's opinion states:

> There is no indication in that section, however, of an intent to prohibit *an exclusive representative and a public employer from agreeing to allow dues check off* for any employee organization which an employee selects, nor does that section reveal an intent to alter the conditions of existing contracts. [Emphasis added.]

Minn.Op.Att'y Gen.No. 270 D (September 28, 1973).

We find no conflict between our decision and the attorney general's opinion. We hold that Minn.Stat. § 179.65, subd. 5 (1980), prohibits the District from permitting dues check off in favor of a minority employee association when an exclusive representative exists. However, as the attorney general's opinion indicates, the District and AHEA, the exclusive representative, may contractually agree to permit the practice of dues check off for a minority employee association.

AHFT and the District argue that AHEA's failure to negotiate a restrictive contract provision permitting dues check off for AHEA exclusively constitutes a waiver of the employees' statutory rights. This court has previously stated that "any waiver of a statutory right to bargain over a mandatory subject of bargaining must be in clear and unmistakable language." *General Drivers Union Local 346 v. Independent School District No. 704,* 283 N.W.2d 524, 527 (Minn.1979). Such a waiver should be strictly construed.

◼ The relevant provision in the contract between AHEA and the District read:

Teachers shall have the right to have their membership dues deducted for the Exclusive Representative on a payroll deduction plan. Upon receipt of a dues deduction authorization for a teacher, the District shall continue such deductions in succeeding years until notified by the Association to cease.

This contract language does not constitute a waiver in "clear and unmistakable language." Moreover, this contract language manifests the parties' intention with respect to dues check off. We must give greater weight to the parties' express language than any prior course of dealing. *See Restatement (Second) of Contracts* § 229 (Tent.Draft No. 5, 1970).

■ It is argued that an employee can, by contract, authorize an employer to make payroll deductions under Minn.Stat. § 181.-06, subd. 2 (1980), and that Minn.Stat. § 181.063 (1980) specifically grants this contractual right to school district employees. These statutes are irreconcilable with Minn. Stat. § 179.65, subd. 5 (1980). It is a long-standing rule of statutory construction that when two provisions are irreconcilable, "the special provision shall prevail and shall be construed as an exception to the general provision * * *." Minn.Stat. § 645.26, subd. 1 (1980). Moreover, "the law latest in date of final enactment shall prevail." Minn. Stat. § 645.26, subd. 4 (1980). Applying these rules of statutory construction, we are compelled to give effect to the prohibition contained in Minn.Stat. § 179.65, subd. 5 (1980). The legislature enacted this PEL-RA provision more recently than the other statutory provisions and this provision is particular in nature.

Affirmed.

YETKA, Justice (dissenting).

The majority interprets section 179.65(5) to allow minority dues checkoff when the agreement between the school district and the exclusive representative so provides. The issue then becomes whether the exclusive representative has so agreed in this case. The majority does not undertake to answer this question.

Several factors demonstrate that the exclusive representative has agreed to permit minority dues checkoff. First, its contract with the school district has never prohibited this practice. If the contract was intended to prohibit minority dues checkoff, then it should have so provided. The fact that the contract never prohibited this practice becomes especially important in view of the fact that minority dues checkoff was permitted by the school district until August 20, 1973. Although the practice stopped at that time, no new language prohibiting minority dues checkoff was added to the contract. The 1973 amendment to section 179.-65(5) went into effect on May 25, 1973.[1] For three months, the school district allowed minority dues checkoff under the new statute, and the exclusive representative acquiesced in the practice. If the contract with the school district permitted this practice in 1973 after the statute was amended, then the same contract should permit the same practice today. *See Restatement (Second) of Contracts* § 249 (Tent.Draft No. 6, 1971) (prior conduct of parties supplements and is used for interpreting agreement).

Second, the practice complained of in this case is one that is followed in many other school districts throughout the state. It is a custom in the profession and, because it is not prohibited by the contract, it becomes a term of the exclusive representative's contract with the school district. *See id.* § 247 (agreements are supplemented by customary practice with respect to other agreements of the same type).

Finally, there is another factor that shows the parties did not intend their contract to prohibit minority dues checkoff. An affiliate of one of the plaintiffs in this case was involved in a 1974 arbitration proceeding that interpreted section 179.65(5) to give school districts the discretion to permit

1. *See* Act of May 24, 1973, ch. 635, § 38, 1973 Minn.Laws 1526, 1541 (effective date provision).

minority dues checkoff. Although this court gives no deference to an arbitrator's interpretation of a statute, the arbitrator's decision did give plaintiffs reason to know that section 179.65(5) might not prohibit minority dues checkoff. Yet the contract was never amended to prohibit the practice. This also shows long-term acquiescence by the plaintiffs and demonstrates that the parties intended their contract to permit minority dues checkoff.

The prior conduct of the parties and the customs of the profession show quite clearly that the contract in this case allows minority dues checkoff. The majority decision acknowledges that the parties can agree to permit this practice, yet it does not decide whether such an agreement has been made. Because the facts demonstrate such an agreement, however, the trial court's decision should be reversed.

SCOTT, Justice (dissenting).

I agree with the dissent of YETKA, J.

