Daniel J. **FRANDRUP**, et al., Relators,

v.

**PINE BEND WAREHOUSE,**
**et al., Respondents,**

**Commissioner of Economic**
**Security, Respondent.**

**No. C7–94–2516.**

Court of Appeals of Minnesota.

May 23, 1995.

William F. Garber, Minneapolis, for relators.

Lisa Hurwitz Dercks, Doherty, Rumble & Butler, Minneapolis, for respondents Pine Bend Warehouse, et al.

Kent E. Todd, St. Paul, for respondent Com'r of Economic Security.

Considered and decided by KLAPHAKE, P.J., and RANDALL and MULALLY,* JJ.

## OPINION

RANDALL, Judge.

Daniel J. Frandrup, et al. (Relators), appeal from the Minnesota Department of Economic Security Commissioner's representative's decision to deny relators reemployment insurance benefits. Relators argue private postal meter date stamps are not acceptable under the filing requirements of the Minnesota economic security act as proof of timely filing of appeals for reemployment insurance benefits. Thus, relators argue respondent-employer's appeal was untimely and barred. We affirm.

## FACTS

Relators are twenty-three employees of CFI Industries (respondent) who went on strike on April 20, 1994. Relators all filed claims for reemployment insurance benefits with the Minnesota Department of Economic Security (Department) claiming they were locked-out and had no recourse but to strike.

The Department's adjudicator (adjudicator) held that all relators were involuntarily separated from employment and were entitled to receive benefits. The Department claims it mailed twenty-three notices of determination to The Frick Company (Frick), which acted as respondent's agent in all reemployment insurance matters before the Department.

Respondent appealed to the Department's referee. Relators argued that all twenty-three of respondent's appeals were not filed within the fifteen day statutory period for

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

appeals from the adjudicator. Therefore, relators argue the referee lacked jurisdiction to hear the appeal.

Respondent argued Frick only received nine of twenty-three notices of determination and mailed nine corresponding appeals letters to the Department on May 23, 1994, the last day for appeal. The nine appeals letters were stamped, "May 23, 1994" by Frick's private postal meter machine located in its St. Louis office. Respondent also argued Frick did not receive the other fourteen notices of determination until after the fifteen day period expired, but when respondent did determine those fourteen were granted benefits, fourteen appeal letters were mailed within fifteen days of their actual notice. Those fourteen appeals were mailed by letter dated June 15, 1994, as stamped by Frick's private postal meter.

On October 5, the referee ruled that nine of the twenty-three relators (the group of nine) were disqualified from receiving benefits because they were involved in a strike. In reaching that decision, the referee found that the group of nine's appeal letters were timely filed. The referee also ruled that he lacked jurisdiction to rule on the other fourteen of the twenty-three relator's appeals (the group of fourteen) because those appeals were not filed within the fifteen-day statutory period.

Respondent appealed the referee's decision to the Commissioner. On November 23, 1994, the Commissioner's representative decided it had jurisdiction to rule on the merits of the group of fourteen's claims for benefits. The Commissioner's representative found that Frick did not receive the group of fourteen's notices, and that the Department did not mail them to Frick in the first place. Because the notices were not mailed, the time limit did not run until Frick had actual knowledge of the adjudicator's decision. The Commissioner's representative ruled the group of fourteen's appeals were timely filed within fifteen days of Frick's actual knowledge. The Commissioner's representative then ruled it had jurisdiction to decide on the merits.

The Commissioner's representative also ruled that the group of nine's appeals were timely filed. At the hearing, relators argued the group of nine's appeals could not be timely because the nine envelopes that contained the appeals were stamped by Frick's private postal meter and did not bear the cancellation mark of the United States Postal Service as required by the reemployment insurance statute.

The Commissioner's representative rejected relator's arguments and ruled all nine appeals were received by the Department's Red Wing office on May 25, 1994; that they were sent from Frick's office in St. Louis, Missouri on May 23, 1994; and that "a preponderance of the evidence leads [the Commissioner's representative] to find that the appeals by the employer as to the nine of the named claimants were, in fact, filed for purposes of the Minnesota Economic Security law on May 23, 1994 and therefore, jurisdiction lies to decide the merits."

The Commissioner's representative then decided that all twenty-three relators were engaged in a strike and that there was no constructive lockout; therefore, all twenty-three relators were disqualified from receiving reemployment insurance benefits.

## ISSUE

Is a private postal meter date stamp acceptable for timely filing of appeals for reemployment insurance benefits with the Minnesota Department of Economic Security?

## ANALYSIS

 This court reviews the findings of the Commissioner's representative, not those of the referee. *See Tuff v. Knitcraft Corp.,* 526 N.W.2d 50, 51 (Minn.1995) and *Chellson v. State, Div. of Employment & Sec.,* 214 Minn. 332, 335, 8 N.W.2d 42, 44 (1943). The Commissioner's representative's findings of fact should be reviewed in the light most favorable to the decision, and should not be overturned if there is evidence in the record that reasonably tends to sustain those findings. *Ress v. Abbott Northwestern Hosp.,* 448 N.W.2d 519, 523 (Minn.1989). The Commissioner's representative's conclusions of law, however, are not binding on this court. *Id.*

Appeal of an adjudicator's decision whether to grant reemployment insurance benefits is final unless "an appeal * * * is filed by a claimant or employer within 15 days after the mailing of the notice of the determination." Minn.Stat. § 268.10, subd. 2(3) (1994). "Filing" means

> the delivery of any document to the commissioner or any of the commissioner's agents or representatives, or the depositing of the same in the United States mail properly addressed to the department with postage prepaid thereon, in which case the same shall have been filed on the day indicated by the *cancellation mark* of the United States Post Office Department.

Minn.Stat. § 268.04, subd. 15 (1994) (emphasis added). In addition,

> [a]ppeals may be delivered to or filed at the appellate office or any unemployment insurance office of the department or through the United States mail. Appeals filed by mail must be properly addressed to the department with postage prepaid, and the date of filing is the *postmark date.*

Minn.R. § 3310.2903 (1993) (emphasis added).

On appeal, relators argue the reemployment insurance statute unambiguously states that private postal meter date stamps are not acceptable to indicate timely filing of reemployment insurance appeals. Respondents disagree, arguing the statute does not specifically prevent the use of private postal meters which are authorized by the Postal Service. This issue appears to be a case of first impression in Minnesota.

■■■ A fundamental rule of statutory construction is that the court should look first to specific statutory language and be guided by its natural and most obvious meaning. *Heaslip v. Freeman,* 511 N.W.2d 21, 22 (Minn.App.1994), *pet. for rev. denied* (Minn. Feb. 24, 1994). The object in construing a statute is to determine and effectuate the intention of the legislature. *Lamont v. Minnesota Dep't of Employee Relations,* 495 N.W.2d 11, 13 (Minn.App.1993). Statutory construction is an issue of law subject to de novo review on appeal. *Id.*

Relators argue the legislature did not authorize private postal meters because it only used the term "cancellation mark" of the United States Post Office in the statute. We disagree. From the language of the statute, regulation, and legislative history, it is not clear at all the legislature *excluded* private postal meter marks as indicative of timely appeals. The term "cancellation mark" is not defined by the statute or regulation. The statute was amended in 1945 to include the definition of "filing." 1945 Minn.Laws ch. 376, § 1. "Cancellation mark" was included as part of the definition without any discussion of its meaning. *Id.* In addition, the accompanying regulation uses the term "postmark" rather than "cancellation mark." Minn.Rules § 3310.2903.

The United States Postal Service's Domestic Mail Manual (DMM) defines and regulates U.S. mail. 39 C.F.R. § 111.1 (1993). The Postal Service exercises its authority by granting private customers the license to function as a United States post office by stamping their mail on private postal meter machines. 39 C.F.R. § 222.1(a) (1993); United States Postal Service, Issue No. 47, Domestic Mail Manual (DMM) P030.2.1 (1994). We note that metered mail is "entitled to all privileges and subject to all conditions applying to the various classes of mail." DMM P030.1.4.

Postal meters are subject to strict control by the Postal Service. Postal meters are licensed by the Postal Service. DMM P030.2.0 et al. Revocation of licenses and scheduled examinations and audits help ensure the proper use and accuracy of the private meters. DMM P030.2.4; 2.7. In addition, a faulty meter must never be used. DMM P030.2.5.

The Postal Service requires the date shown on the private meter be the actual date of deposit in the mail. DMM P030.4.11. Postal employees are required to check metered mail for correct dates. DMM P030.5.4. Only if the wrong date appears, is a ".00" postage meter impression, or cancellation mark, applied by the post office. Metered mail is not, and should not be, canceled or otherwise postmarked by the post office. DMM P030.4.12; 5.4. Yet, despite this regu-

lation, relators continue to argue that if a reemployment insurance appeal is mailed, the date of filing *has to be* recognized by a "cancellation mark" of the United States Post Office, and that a legal private postage meter can never be the equivalent. Relators argue that somehow a "cancellation mark" is a unique mark placed by employees at the Post Office and that a cancellation mark is utterly different than a private postal meter stamp.

A statute must be enforced literally if its language embodies a definite meaning which involves no absurdity or contradiction. *Peterson v. Halvorson,* 200 Minn. 253, 256, 273 N.W. 812, 813 (1937). The legislature, however, does not intend a result that is absurd or unreasonable. Minn.Stat. § 645.17(1) (1994).

We conclude relator's narrow interpretation is incorrect. The United States Postal Service does not have a rule that private postal meters are not official arms of the United States Postal Service. In fact, the rule is otherwise. As previously stated, the Postal Service monitors meters and specifically provides for their usage. Further, the Postal Service has a rule that metered mail does not need to be canceled at the post office if it is mailed on the same day it is reviewed by the post office. The cancellation mark of the post office is, therefore, merely indicative of the Postal Service's acknowledgement that a piece of mail passed through the postal system on a given date. The mark of a private postage meter performs the same service. Because the terms "postmark" and "private postal meter stamp" also indicate the piece of mail has passed through the postal system on a given date, the term "cancellation mark" in the statute is ambiguous.

It is illogical to carve out one relatively minor area of law as requiring old fashioned hand cancellation at the post office when private postal meters are acceptable for all the other thousands of pieces of mail that accompany litigation. It does not comport with common sense that private postal meters are not acceptable alternatives when the U.S. Postal Service authorizes and closely regulates the private meters to insure integrity in the mail system.

Further, there would be a fundamental anomaly in not allowing private postal meters on mailed appeals. If a party uses a private postal meter, but fails to deliver the appeals to the post office until three days later, the post office will hand-cancel them with a .00 postage mark indicating the date they went through the post office. The appeals ("cancelled by a postmark") will then be delivered like any other mail. If, on the other hand, privately metered appeals are sent to the post office on the same day they are metered, the post office will not "cancel", but the appeals will also be delivered like any other mail. Under relator's interpretation, assuming the appeals in both examples were dated before the last day for appeal, only those delivered later could be timely because the post office cancels them. Private metered mail delivered the same day to the post office, as the Postal Service encourages, would not be as good as metered mail delivered later because the post office does not apply its own cancellation mark to metered mail delivered promptly. Thus, timeliness is penalized and later delivery is rewarded. We cannot reward a bizarre interpretation of the statute.

Both parties agree that if the appeals were timely, respondents prevail. Because of the parties' agreement on the merits, we do not address the Commissioner's representative's ruling that relators are not entitled to reemployment insurance benefits.

## DECISION

The Commissioner's representative correctly determined that private postal meter date stamps are proof of timely filing of appeals for reemployment insurance benefits under the Minnesota economic security act. Because respondent's appeals were timely, Commissioner's representative's ruling that relators were not entitled to reemployment insurance benefits will stand.

**Affirmed.**