**SCHWICKERT, INC., Respondent,**

v.

**WINNEBAGO SENIORS, LTD., et al., Respondents (C8–02–1972), Appellants (C4–02–2083),**

v.

**11,111, INC., d/b/a Energy Conservation Consultants, Inc., third–party defendant, Respondent (C4–02–2083),**

**AMCO Insurance Company, Inc., Appellant (C8–02–1972), Respondent (C4–02–2083).**

Nos. C8–02–1972, C4–02–2083.

Court of Appeals of Minnesota.

May 27, 2003.

Scott V. Kelly, Farrish Johnson Law Office, Mankato, MN, for respondents Schwickert, Inc. and Energy Conservation Consultants.

Paula Duggan Vraa, Rider, Bennett, Egan & Arundel, LLP, Minneapolis, MN, for respondents Winnebago Seniors, Ltd., Minnesota Housing Finance Agency and Thies & Talle Enters., Inc.

Jon A. Hanson, E. Curtis Roeder, Candy B. Olson, Hanson, Lulic & Krall, Min-

neapolis, MN, for appellant AMCO Insurance Company, Inc.

Considered and decided by
TOUSSAINT, Chief Judge, MINGE, Judge, and HUSPENI, Judge.*

# OPINION

TOUSSAINT, Chief Judge.

These consolidated cases originated as a contractor's mechanic's-lien action regarding services for re-roofing an apartment building. The owners of the property then counterclaimed for water damage while the building was being re-roofed and brought a third-party action against both their roofing consultant and their insurer. Shortly before the scheduled trial, the owners accepted, over the insurer's objections, a Rule 68 settlement offer from the contractor and the consultant, and the district court administrator entered judgment. The remaining parties moved for summary judgment. The court denied the insurer's motion, granted the other parties' motions, and certified to this court the question of whether *Schmidt v. Clothier* applies to a first-party-property insurance dispute outside of the personal-injury context. In addition, the court ruled that the owners were not entitled to attorney fees or prejudgment interest on the Rule 68 settlement offer. We answer the district court's certified question regarding the applicability of *Schmidt* in the affirmative, but we reverse and remand with regard to the court's determination that the *Schmidt* notice requirements were satisfied.

## FACTS

This case arises out of damage to the Garden Court Apartments, which are jointly owned by appellants Winnebago

Seniors, Ltd.; the Minnesota Housing Finance Agency; and Thies & Talle Enterprises, Inc. (collectively "the owners"). The property, a three-story apartment building, had a history of roof leakage and was insured through respondent AMCO Insurance Company, Inc. (AMCO).

In 1998, the owners retained respondent 11,111, Inc. d/b/a Energy Conservation Consultants, Inc. (ECC) to evaluate the building's roof and to prepare plans for a new roof design. ECC determined that the plywood decking was badly deteriorated, and it developed a design to repair the roof. Owners then hired respondent Schwickert, Inc. (Schwickert) for the re-roofing project using ECC's design. In two separate incidents in October 1998, rainstorms occurred after Schwickert had removed large portions of the roof covering the building's atrium. Despite Schwickert's efforts to cover the roof, water entered the atrium and caused damage to the building. The owners declined to make full payment to Schwickert and ECC, citing their failure to adequately protect the building from water incursions.

On November 2, 1998, the owners reported the damage from the two rainstorms to AMCO. In February and March of 1999, AMCO investigated the claim and notified ECC and Schwickert of its intent to subrogate against them for the cost to repair the damage from the October 1998 water intrusions. But in July of 1999, AMCO denied coverage for the October 1998 claims, stating that the roof was not damaged by a covered cause of loss and that the damage was caused by negligent workmanship. Consequently, the owners hired another contractor and completed the repairs to the property at their own

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to     Minn. Const. art. VI, § 10.

expense, which they claim totaled almost $1.5 million.

In October 1999, Schwickert commenced an action against the owners to enforce its mechanic's lien for unpaid services. The owners answered and counterclaimed, alleging negligence, breach of contract, and breach of warranty. The owners also brought a third-party action against AMCO for its denial of insurance benefits and against ECC for breach of contract, negligent supervision, and negligent design. AMCO answered the third-party complaint, claiming that the loss was excluded from coverage, and initiated a cross-claim against ECC and a Rule 14.01 subrogation claim against Schwickert. ECC answered the third-party complaint denying liability, counterclaimed for non-payment of services rendered, and cross-claimed against Schwickert and AMCO for indemnification.

In early 2002, AMCO moved for summary judgment, arguing that the water damage is excluded from its policy. The owners also moved for summary judgment against EEC and Schwickert. In March, the district court denied AMCO's motion. The district court later granted to the owners partial summary judgment against ECC and Schwickert, concluding that ECC was negligent in its roof design and that Schwickert's failure to provide site protection constituted a breach of contract.

On April 30, 2002, ECC and Schwickert submitted to the owners a Rule 68 joint offer of judgment in the amount of $650,000, including "costs disbursements, interest, and attorneys fees to date" in exchange for dismissal of ECC's and Schwickert's claims against owners. The owners did not accept this offer. On May 3, 2002, twelve days before the scheduled trial, Schwickert and ECC made a second Rule 68 settlement offer to the owners, increasing the amount to $800,000. Unlike

the first offer, the second offer was silent regarding costs, disbursements, interest, and attorney fees, and it expressly expired ten days after service. On May 6, the owners, interested in the offer, orally invited AMCO to substitute its draft for $800,000 to preserve the subrogation rights recognized by *Schmidt v. Clothier,* 338 N.W.2d 256 (Minn.1983). The next day, AMCO faxed a letter to the owners contending, among other things, that *Schmidt* applies only to no-fault cases, not to property-damage disputes; even if *Schmidt* were applicable, AMCO argued that it was entitled to 30 days' notice to consider whether it would substitute its draft.

The same day as AMCO's fax, May 7, the owners accepted the second offer over AMCO's objection, and the district court administrator entered the $800,000 judgment against Schwickert and ECC. Responding to AMCO's objection of lack of sufficient notice, the district court found that AMCO did not request additional time to consider the joint offer.

AMCO subsequently moved for summary judgment, arguing that despite the judgment against ECC and Schwickert, it still retained a viable cross-claim against ECC and a viable Rule 14.01 claim against Schwickert. ECC and Schwickert made cross-motions for summary judgment, contending that any claims against them were resolved by the Rule 68 offer and judgment. In addition, the owners moved for costs, disbursements, prejudgment interest, and attorney fees against ECC and Schwickert.

On November 4, 2002, the district court denied AMCO's motion for summary judgment, concluding that (1) the principles in *Schmidt* apply to this action; (2) AMCO had sufficient notice of the offer of judgment; (3) AMCO was given the opportunity to substitute its draft for $800,000, but

it chose not to do so; (4) AMCO waived its subrogation rights against ECC and Schwickert by failing to substitute its draft; and (5) the owners' acceptance of the offer of judgment did not release AMCO from its contractual obligations to the owners. The district court certified as important and doubtful the question of whether the principles of *Schmidt v. Clothier* apply in a first-party property-insurance dispute outside of the personal-injury context.

The district court also (1) granted ECC's and Schwickert's motions to dismiss AMCO's claims against them, (2) awarded the owners' costs and disbursements against Schwickert and ECC but denied them prejudgment interest and attorney fees on the $800,000 judgment, and (3) ordered entry of final partial judgment under Minn. R. Civ. P. 54.02.

AMCO now appeals from (1) the denial of its summary-judgment motion regarding *Schmidt's* applicability and (2) the grant of summary judgment dismissing its claims against Schwickert and ECC. The owners seek review of the denial of their motion for attorney fees and prejudgment interest.

## ISSUES

I. Do the principles in *Schmidt v. Clothier* apply to first-party property insurance disputes outside of the personal-injury context?

II. If *Schmidt* applies, did the owners properly follow its provisions?

III. Did the district court err by denying the owners attorney fees and prejudgment interest on the Rule 68 judgment?

## ANALYSIS

■ A reviewing court is not bound by, and need not give deference to, a district court's decision on a purely legal issue. *Frost–Benco Elec. Ass'n v. Minn. Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984). Although certain factual determinations here are currently unresolved, the issues raised on appeal are purely legal and are reviewed de novo.

## I.

■ The question of whether *Schmidt v. Clothier,* 338 N.W.2d 256 (Minn.1983), applies to first-party property-insurance disputes outside of the personal-injury context is a matter of first impression. In the past, *Schmidt* has only been applied to cases involving uninsured and underinsured motorists. *See e.g., Malmin v. Minn. Mut. Fire & Cas. Co.,* 552 N.W.2d 723, 724 (Minn.1996) (underinsured motorists); *Employer's Mut. Cos.v. Nordstrom,* 495 N.W.2d 855, 855–56 (Minn.1993) (same); *Ruddy v. State Farm Mut. Auto. Ins. Co.,* 596 N.W.2d 679 (Minn.App.1999) (uninsured motorists), *review denied* (Minn. Sept. 28, 1999). Here, we encounter an action for recovery of damage to property.

■ In *Schmidt,* a consolidated case, the tortfeasors made settlement offers to underinsured motorists, and the underinsurers were given notice of the offers, but the underinsurers refused to substitute drafts to preserve their subrogation rights. 338 N.W.2d at 259–60. The supreme court held that between the tortfeasor and the insurer, the balance of equities falls with the insurer. *Id.* at 262–63. An underinsurer must be provided 30 days' notice to consider and assess the settlement offer and to determine whether it wants to preserve its subrogation rights. *Id.* at 263. If it wishes to do so, an insurer must substitute its draft for the settlement amount within that time; if the insurer does not substitute its draft within that time, it fails to preserve its subrogation rights. *Id.*

AMCO argues that *Schmidt* was meant to apply only to underinsured- or uninsured-motorist cases without any dispute as to coverage or liability, and because AMCO disputes coverage, *Schmidt* is inapposite here. AMCO also makes the policy argument that if *Schmidt* is held to apply, an insurer in AMCO's position would be forced to choose between (a) agreeing to substitute its payment, thereby abandoning its causation defense against owners, or (b) declining payment substitution, thereby eliminating its subrogation rights against the alleged tortfeasors. AMCO further contends that if this court adopts *Schmidt*, a tortfeasor with substantial liability will be able to present the insured with offers substantially less than its liability and extinguish the first-party insurer's subrogation rights, giving the insured inequitable leverage over the insurer.

We disagree with AMCO's analysis and policy arguments. Each of these arguments contemplates the same predicaments faced by insurers in the underinsured-or uninsured-motorist cases currently governed by *Schmidt v. Clothier*. The *Schmidt* court considered similar arguments when it established the policy that we now apply. *Id.* at 262 (rejecting argument that potential destruction of an insurer's subrogation rights precludes insured's recovery of underinsurance benefits). To the extent that the tortfeasor has "inequitable leverage" in that situation, the supreme court has balanced these equities and has concluded that an insured and a tortfeasor are permitted to settle, so long as the insured provides the insurer with the proper procedural safeguards. We see no compelling reason to alter the policy merely because this case is brought in the context of property damage.

Finally, AMCO argues that if the settlement agreement is upheld, the owners may be able to obtain double recovery for the same damages through both the settlement and through a potential future recovery from AMCO because the offer does not delineate what the $800,000 settlement is meant to cover. But the issue of double recovery is not ripe because the jury in a prospective trial would have the task of determining coverage and the allocation of damages.

The owners contend that because AMCO has denied coverage throughout the litigation, it cannot now attempt to assert its potential subrogation rights. *See, e.g., Stephens v. State Farm Mut. Auto. Ins. Co.*, 508 F.2d 1363, 1366 (5th Cir.1975) (stating that insurer should not be allowed to deny liability yet insist that insured honor its contractual commitment to obtain consent to settle); *Sexton v. Cont'l Cas. Co.*, 816 P.2d 1135, 1138 (Okla. 1991) (holding that insurer may not complain of lack of consent to settlement that comes after insurer's denial of coverage). The above cases focus on the insurer's attempted contractual enforcement of provisions found in the policy; they do not consider the practice and principles espoused by *Schmidt v. Clothier*. This is not a matter of whether AMCO may enforce the subrogation requirements outlined in the policy, but it is instead a determination of whether the principles under *Schmidt* require the insured to provide the insurer with notice and an opportunity to retain its subrogation rights. Further, the application of *Schmidt* is not precluded by the presence or absence of particular conduct during the course of litigation.

■ It is true that if an insurer breaches its duty to defend, leaving "the entire control and conduct of the litigation" with the insured, the insured can protect itself by reaching a reasonable, good-faith settlement with the tortfeasors without notice to the third-party liability insurer. *Browns-*

*dale Coop. Ass'n v. Home Ins. Co.,* 473 N.W.2d 339, 341–42 (Minn.App.1991), *review denied* (Minn. Sept. 25, 1991). Unlike *Brownsdale,* however, AMCO has not left the owners with the entire control and conduct of the litigation but has remained an active participant throughout the litigation. In fact, AMCO's participation here was further ensured by the district court's denial of its summary-judgment motion regarding policy coverage. *Brownsdale* also noted that a reasonable party would have reached the settlement amount, *id.* at 342, where the record here contains no finding that an $800,000 settlement on a $1.5 million claim is reasonable. Further, *Brownsdale* did not include the additional claims against the insurer that are present here. The owners in this case could receive an additional sum in their claim against AMCO. For these reasons, *Brownsdale* is inapposite here.

Because we see no compelling reason why *Schmidt v. Clothier* should not extend to first-party insurer disputes involving damage to property, we answer the certified question in the affirmative.

## II.

Having held that *Schmidt* applies here, we must now determine whether the owners properly followed the procedure set out in that case. *Schmidt* requires that an insurer receive a 30–day written notice to consider whether it will substitute its draft and preserve its subrogation rights against the tortfeasor. *Schmidt,* 338 N.W.2d at 263; *see Liberty Mut. Ins. Co. v. Am. Family Mut. Ins. Co.,* 463 N.W.2d 750, 753 (Minn.1990).

Schwickert and ECC made their second Rule 68 offer to the owners on May 3, and the offer stated that it would expire ten days after that date, or on May 13. On May 6, nine days before the scheduled trial, AMCO was orally notified of the settlement offer. AMCO responded in writing the next day, and the owners accepted the tortfeasors' offer later that day. Also on May 7, the same day of AMCO's written response, the district court issued its order for judgment.

■ The district court found that AMCO manifested its intent not to substitute its draft on May 7, 2002, and that AMCO "did not request additional time to consider or assess the implications of the joint Offer of Judgment." We do not read the 30–day rule of *Schmidt* to be rendered unnecessary by an insurer's indication that it is unlikely to substitute its draft. Further, AMCO's letter noted the required 30–day notice period under *Schmidt,* and it objected to the rushed circumstances under which it was compelled to respond.

The owners again argue that AMCO's consistent denial of liability waived the 30–day–written–notice requirement. But we have found no such exemption to this *Schmidt* requirement. The purpose of the 30–day period is not only to give notice of the facts and merits of the case, but it is also to assess the settlement agreement and its effects:

> In that time [the insurer] could evaluate relevant factors, such as the amount of the settlement, the amount of liability insurance remaining, if any, the amount of assets held by the tortfeasor and the likelihood of their recovery via subrogation, the total amount of the insured's damages, and the expenses and risks of litigating the insured's cause of action.

*Schmidt,* 338 N.W.2d at 263.

■ If the insured does not provide its insurer with the required 30–day written notice, the insured bears the burden of proving the absence of prejudice to the insurer. *Am. Family Mut. Ins. Co. v. Baumann,* 459 N.W.2d 923, 927 (Minn.

1990). In particular, the *Baumann* court stated:

> Absent the required 30–day written notice, release of the tortfeasor shall be deemed prejudicial to the underinsurer. That presumption of prejudice shall be rebuttable, but the **burden of demonstrating** by a preponderance of the evidence **the absence of prejudice** shall be **borne by the insured.** An insured's **failure to sustain that burden** of proving a lack of prejudice to the insurer **shall result in forfeiture.**

*Id.* (emphasis added).

■ Under these facts, owners have failed to demonstrate the requisite absence of prejudice to AMCO, which was only given one day's oral notice 12 days before the scheduled trial. One day's time is insufficient for an insurer to evaluate the settlement amount, likelihood of recovery, and the other risks inherent in substituting its draft.

The owners attempt to distinguish *Baumann* by contending that the purpose of the notice is to provide insurers with time to evaluate the case, whereas AMCO had participated in two years of litigation prior to the offer and was sufficiently informed to make a decision whether to substitute its draft. We have found no legal support for this interpretation of the rationale for the 30–day notice period. *Schmidt* and its progeny do not distinguish cases where the insurer is familiar with the facts from those in which an insurer has been recently notified of the dispute. Rather, *Schmidt* explicitly provides that the notice is meant to give the insurer time to consider the amount of settlement, the amount of liability remaining under the policy, and the expenses and risks of continued litigation—all of which are present whether the insurer has just been notified of the lawsuit or the insurer has participated in the suit from its initiation.

We hold that the owners failed to properly follow the *Schmidt* requirements and have not sustained their burden of proving that the one-day oral notice of the settlement offer resulted in a lack of prejudice to AMCO. Because we hold that the insufficient notice to AMCO renders the Rule 68 settlement and judgment ineffective, ECC and Schwickert remain parties to the action. Consequently, AMCO retains viable claims against both ECC and Schwickert.

## III.

■ Although we hold that the owners' failure to give AMCO proper notice of the Rule 68 offer makes the settlement and resultant judgment ineffective, we nevertheless reach, for purposes of review, the issue of whether the district court erred in denying the owners' motion for attorney fees and prejudgment interest on the $800,000 judgment. An appellate court will review legal determinations regarding Rule 68 offers of judgment de novo. *Collins v. Minn. Sch. of Bus., Inc.,* 655 N.W.2d 320, 324 (Minn.2003).

### *Attorney Fees*

■ Rule 68 offers of judgment are construed under ordinary principles of contract law. *Id.* at 328. "Rule 68 alone does not entitle a party who otherwise is not entitled to attorney fees to recover attorney fees as part of costs and the disbursements." *Id.* at 325. The owners instead base their claim on the following extrinsic evidence: (1) the first, rejected offer of judgment and (2) the indemnification language of the owners' initial contract for services with Schwickert.

The owners' claim for attorney fees is directed only to Schwickert and not to the joint offeror, ECC. The district court denied the owners' motion for attorney fees,

reasoning that because the second, accepted offer did not expressly include attorney fees, and because the claims under the contract for services merged with the contract for settlement under Rule 68, the court could not add the missing term to the offer. *See Stinson v. Clark Equip. Co.*, 473 N.W.2d 333, 335–36 (Minn.App. 1991) (affirming district court's conclusion that absent evidence to the contrary, court would not add a term to Rule 68 offer), *review denied* (Minn. Sept. 13, 1991); *see also Bucko v. First Minn. Sav. Bank*, 471 N.W.2d 95, 98 (Minn.1991) (holding that "costs" under Rule 68 do not include attorney fees).

■■■■ The district court properly concluded that it may not add a missing term to the contract formed by the acceptance of the offer of judgment. The owners argue that they are not asking the court to add a missing term, but to interpret the first offer as a "course of dealing" between the parties. We do not agree that a solitary Rule 68 settlement offer that was later rejected by the offeree is a "course of dealing" under any construction of the term. Further, a court "must give greater weight to the parties' express language than any prior course of dealing." *Anoka–Hennepin Educ. Ass'n v. Anoka–Hennepin Indep. Sch. Dist. No. 11*, 305 N.W.2d 326, 330 (Minn.1981). The accepted offer was silent as to attorney fees and was free from ambiguity. The owners conceded before the district court that the second offer was not ambiguous, but that it was "clear and unambiguous on its face." A court interpreting a non-UCC contract may only look to extrinsic evidence when ambiguity is present. *See Novus Equities Corp. v. EM–TY P'ship*, 381 N.W.2d 426, 430 (Minn.1986). And it is not the court's role to "speculate or to create uncertainty about the effect of Rule 68 offers of judgment when they are free from ambiguity."

*Farmer's State Bank of Darwin v. Swisher*, 631 N.W.2d 796, 801 (Minn.2001).

■■■■ The owners next argue that if Schwickert had intended to include attorney fees in the second offer, it should have clearly stated this intention. *See Collins v. Minn. Sch. of Bus., Inc.*, 636 N.W.2d 816, 818–19 (Minn.App.2001), *aff'd*, 655 N.W.2d 320 (Minn. Jan.16, 2003). If a drafter of a Rule 68 offer does not clearly state its intention to include attorney fees within the judgment amount, an offeree who sues *under a statute allowing attorney fees* would be entitled to such fees. *Collins*, 655 N.W.2d 320, 330 (Minn.2003).

In *Collins*, the plaintiffs accepted a Rule 68 offer of judgment for $200,000, "together with any costs and disbursements allowed by the District Court." 655 N.W.2d at 322. Plaintiffs later moved for attorney fees under the private attorney general statute. *Id.;* Minn.Stat. § 8.31, subd. 3a (2002) (providing for recovery of attorney fees where person injured under specific laws). The district court denied plaintiff's motion for attorney fees, and the primary issue on appeal was

> whether costs and disbursements in an accepted Rule 68 offer can include attorney fees *when the statute underlying the cause of action includes attorney fees* in its definition of costs and disbursements.

*Collins*, 655 N.W.2d at 326 (emphasis added).

But, the instant facts are distinguishable from those in *Collins*. While the *Collins* claim was based on a statute specifically allowing attorney fees, the current claim does not involve such a statute. Because this case involves no statute providing for attorney fees, the district court properly held that *Collins* does not compel it to make such award.

We now turn to the owners and Schwickert's original contract for services, which the owners contend should be considered as extrinsic evidence providing for attorney fees. The contract permits recovery of attorney fees resulting from Schwickert's negligence. We agree with the district court's conclusion that the owners' claim for attorney fees under the contract was a substantive claim that was merged with, and ultimately resolved by, the owners' acceptance of the offer of judgment. Accordingly, the owners may not later revive their claim for attorney fees under the guise of "costs."

■ A district court may not award attorney fees based on Rule 68 alone. Because the prior, rejected offer does not constitute a "course of dealing" between the parties; because no statute permits attorney fees in this matter; and because claims under the contract for services merged with the offer for judgment, the district court did not err by denying owners' motion for attorney fees.

### Prejudgment Interest

The district court also denied the owners' motion for prejudgment interest against both Schwickert and ECC, again reasoning that it could not add terms to the contract. The owners argue that the statute permitting prejudgment interest only requires that the claimed losses be "pecuniary damages" and does not require that the claim be "readily ascertainable." *See* Minn.Stat. § 549.09, subd. 1(b) (2002). But the statute does not apply here because the parties' Rule 68 offer does not delineate the types of damages it includes, making prejudgment interest indeterminable. *Stinson*, 473 N.W.2d at 336.

■ We hold that the district court permissibly declined to award prejudgment interest on the judgment because the owners' damages were not "readily ascertainable by computation." *See Summit Court, Inc. v. N. States Power Co.*, 354 N.W.2d 13, 16 (Minn.1984) (stating that plaintiff is entitled to prejudgment interest "where the damages were readily ascertainable by computation or reference to generally recognized standards such as market value"). The multiple claims and parties in this litigation would make it difficult to determine which damages were attributable to which parties and in what amount, precluding a "readily ascertainable" assessment of damages. *See Stinson*, 473 N.W.2d at 336 (holding that because the Rule 68 offer did not differentiate between types of damages, amount of prejudgment interest was indeterminable); *see also N. Petrochemical Co. v. Thorsen & Thorshov, Inc.*, 297 Minn. 118, 132, 211 N.W.2d 159, 169 (Minn.1973) (affirming denial of prejudgment interest where neither the amount nor the apportionment of damages was readily ascertainable).

The owners argue that legislation passed after *Summit Court* altered that decision's analysis, no longer requiring damages to be "readily ascertainable." *See* 1984 Minn. Laws ch. 399, § 1 (amending statute regarding prejudgment interest) (codified in Minn.Stat. § 549.09, subd. 1(b) (2003)). But this court rejected an identical argument in *Wenzel v. Mathies*, 542 N.W.2d 634, 644 (Minn.App.1996), *review denied* (Minn. Mar. 28, 1996). In that case, this court recognized that neither the 1984 amendment nor subsequent case law changes the requirement that damages be "readily ascertainable." *Id.*

The owners next argue that even if damages must be "readily ascertainable," the fixed amount of Schwickert and ECC's offer of judgment ($800,000) provides a sufficient figure from which prejudgment interest can be determined. *Cf. Summit Court, Inc.*, 354 N.W.2d at 16 (prejudg-

ment interest allowed where parties stipulated to fixed amount of costs). This argument runs counter to this court's prior holding in *Stinson* that prejudgment interest could not be added to a judgment even though the settlement amount was the fixed figure of "$240,000, plus costs and disbursements." 473 N.W.2d at 335–36.

Consequently, the district court properly relied on the text of the agreement itself, without considering the rejected offer and prior contract for services, when it denied the owners' motions for attorney fees and prejudgment interest.

## DECISION

We affirm the district court's determination that the practice and principles outlined in *Schmidt v. Clothier* apply to first-party property-insurance disputes. But we reverse the court's determination that the owners complied with the *Schmidt* notice requirements, we reverse the court's dismissal of AMCO's claims against ECC and Schwickert, and we remand for further proceedings consistent with this opinion.

**Certified question answered in the affirmative, affirmed in part, reversed in part, and remanded.**