FARMER'S STATE BANK OF
DARWIN, Plaintiff,

v.

Jill SWISHER, Defendant and Third–
Party Plaintiff, Petitioner,
Appellant,

v.

Mark Leonard Johnson, Third–Party
Defendant, Respondent,

and

Darwin Bancshares, Inc., Third–
Party Defendant.

No. C9–00–261.

Supreme Court of Minnesota.

July 19, 2001.

Gregory J. Holly, McGuigan & Holly, P.L.C., St. Paul, for appellant, Jill Swisher.

H. Kelsey Page, Daniel Greenstein, Standke, Greene & Greenstein, LTD, Minnetonka, for respondent, Mark Leonard Johnson.

John A. Fabian, III, Donald H. Nichols, Nichols, Kaster & Anderson, Minneapolis, for Farmers State Bank of Darwin, plaintiff, and Darwin Bancshares, Inc., third–party defendant.

## OPINION

GILBERT, Justice.

Appellant Jill Swisher seeks review of a court of appeals' decision affirming a district court's application of a Rule 68 offer of judgment made by two third-party defendants to reduce a jury verdict against the remaining third-party defendant. Upon respondent's post-trial motion, the district court reduced the jury's verdict by the $50,000 offer of judgment after determining that receipt of the Rule 68 judgment and the jury verdict constituted a double recovery because appellant's claims against the various defendants were not "different in kind." The court of appeals affirmed. We reverse.

In August 1987, Swisher accepted Mark Johnson's repeated job offers to work at the Farmer's State Bank of Darwin (Bank) cleaning after hours and on weekends. Swisher claimed that almost immediately after she became employed, Johnson-who, as the Bank's president, was her sole supervisor-would regularly touch her sexually and attempt to force her to have sexual intercourse with him at the Bank and at other locations. Swisher also claimed that Johnson offered her overdraft privileges, loans, and gifts in exchange for sexual favors. She testified that Johnson's requests were unwelcome, but eventually she engaged in a sexual relationship with him.

Swisher claimed that throughout her relationship with Johnson he was hostile, threatening, abusive, domineering and violent. She also claimed to be the victim of his repeated physical and sexual assaults and batteries. Swisher alleged that on separate occasions, Johnson "pounded" Swisher's head on the cement floor of the Bank, caused her to dislocate her shoulder, boxed her ears and broke her ear drum, grabbed her and shook her, threw her around, struck her face, grabbed her hair and pulled her up, and punched her repeatedly, causing bruising all over her body. He also bruised her ribs.

Before Swisher ended her relationship with Johnson in 1996, she obtained two consumer loans from the Bank. One loan was an $11,155 secured auto loan and the other was a $2,750 unsecured loan. The recovery of these loans formed the basis of the Bank's claims against Swisher. The Bank maintained that Swisher had not made any payments on the auto loan since May 1996 and $9,312.04 plus interest remained due. The Bank also maintained that Swisher had not made any payments on the unsecured loan and that the full principal amount plus interest remained due.

In response to the Bank's complaint, Swisher filed a counterclaim and an amended counterclaim against the Bank and joined Darwin Bancshares, Inc. (DBI) and Johnson as additional third-party defendants. Swisher's amended counterclaim alleged sexual harassment in violation of the Minnesota Human Rights Act (MHRA), assault and battery, intentional and negligent infliction of emotional distress, negligent retention and supervision, aiding and abetting, and obstructing. She sought compensatory damages, punitive damages, and attorney fees, costs, and disbursements "jointly and severally." She also sought dismissal of the Bank's claim against her.

All parties but Swisher filed motions for summary judgment, and on March 29, 1998, the district court dismissed Swisher's claim of negligent infliction of emotional distress against the Bank and DBI. The court also dismissed Swisher's MHRA claim against Johnson after determining that he was not an "employer." On May

10, 1999, the Bank and DBI served and filed an offer of judgment under Minn. R. Civ. P. 68 for $50,000. The offer proposed to settle all claims Swisher asserted against the Bank and DBI and included "reasonable costs, disbursements, interest and reasonable attorney's fees." Swisher accepted the offer on May 11, 1999. The district court entered judgment on Swisher's claims against the Bank and DBI for an agreed upon dollar amount of $50,000, and a satisfaction filed with the court on June 4, 1999 indicated that this judgment was paid in full. The offer of judgment did not prohibit claims against Johnson or provide for any offsets.

On June 1, 1999, the jury trial began on the Bank's consumer loan claims against Swisher and on Swisher's assault, battery, intentional infliction of emotional distress, and punitive damage claims against Johnson. The jury was aware of the resolution of Swisher's claims against the Bank and DBI but not of the amount. Upon completion of the trial, the jury found in a special verdict dated June 16, 1999 that Swisher acted under duress when she signed one, but not both, consumer notes and that Johnson assaulted, battered, and intentionally inflicted emotional distress on Swisher. The jury awarded Swisher compensatory damages of $124,500 by special verdict for past and future pain, disfigurement, embarrassment, or emotional distress; medical services; and a future reduction in earning capacity, and it awarded punitive damages of $15,000 by a separate special verdict.

In a post-trial motion, Johnson moved for, among other things, a dismissal of all Swisher's claims against him and also moved for a reduction in the jury award equal to the $50,000 Rule 68 judgment. He argued that Swisher's receipt of the Rule 68 judgment amount and the jury verdict constituted a double recovery because the Bank, DBI, and Johnson were joint tortfeasors and the claims against all three third-party defendants were not "different in kind."

In response to Johnson's post-trial motion, Swisher argued that she did not receive a double recovery because the offer of judgment included attorney fees, which she was entitled to on her MHRA claim but not on her intentional tort claims. However, Swisher did not submit evidence of the exact dollar amount of attorney fees. Instead, she submitted numerous time records indicating that her attorney and her attorney's law clerks had expended a total of over 465 hours for legal work on Swisher's behalf prior to the May 10, 1999 offer of judgment. She indicated that attorney fees for this work incurred prior to the offer of judgment were more than double the amount of the $50,000 Rule 68 judgment.

The court denied Johnson's motion to dismiss all claims, but it granted Johnson's motion to offset the jury verdict by the amount of the Rule 68 judgment. The court applied Minn.Stat. § 604.01 (2000) (comparative fault) and *Pacific Indem. Co. v. Thompson–Yaeger, Inc.,* 260 N.W.2d 548, 558 (Minn.1977) (explaining and applying Minnesota's comparative fault statute in the context of a negligence action). The court also applied *Wirig v. Kinney Shoe Corp.,* 461 N.W.2d 374, 379 (Minn. 1990), to determine whether Swisher proved the exception to the general rule prohibiting double recovery unless her claims were "different in kind." The court determined that Swisher did not meet her burden of proof because the facts were "common to all Counts against both tortfeasors" and "Swisher did not present evidence at trial that the damages were for separate harms." The court then determined that if the jury verdict stood, Swisher would recover twice for the same injury.

Swisher appealed, and the court of appeals affirmed in an unpublished opinion. The court of appeals applied *Wirig* and held that Swisher did not meet her burden of "show[ing] there was not a double recovery" because she failed to provide any evidence as to what amount of the Rule 68 judgment constituted attorney fees. *Farmer's State Bank of Darwin v. Swisher*, No. C9–00–261, 2000 WL 1693616, at \*2 (Minn.App. Nov.14, 2000). Swisher appeals to this court arguing that she did not receive a double recovery and the lower courts erred in determining that she had the burden to prove that she did not receive a double recovery.

■ We review a lower court's legal determinations regarding Minn. R. Civ. P. 68 offers of judgment de novo with no presumption of correctness. *Stoebe v. Merastar Ins. Co.*, 554 N.W.2d 733, 735 (Minn.1996). From the outset we note that Minn. R. Civ. P. 68 was designed to shift the burden of paying costs properly taxable under Minn. R. Civ. P. 54.04 to encourage settlements by allowing entry of judgment to the effect specified or to pay or accept a specific sum of money with costs and disbursements then accrued. *See* Minn. R. Civ. P. 68 advisory committee's note. In the instant case, that purpose of encouraging settlements among some of the parties without a trial was achieved when Swisher accepted the Rule 68 offer of judgment from the plaintiff and one of the two third-party defendants. However, pursuant to respondent's request, the district court also used the Rule 68 judgment to reduce the jury's verdict against Johnson, the remaining nonsettling third-party defendant.

The court of appeals agreed with the district court's application of the Rule 68 judgment to offset the jury verdict, and both lower courts based their decisions in part on *Wirig* and *Pacific Indem. Co.* In

*Wirig*, an employee sued her employer asserting parallel MHRA and tort claims of battery and defamation. 461 N.W.2d at 376. Both claims arose from the same set of operative facts, which consisted of offensive physical contact–kissing, pinching, patting, and putting an arm around the employee at the workplace. *Id.* at 377. We held that the employee was legally entitled to maintain both causes of action against her employer but we did not uphold double recovery for the same harm. *Id.* at 379. We noted there were two legal remedies for the same wrongful conduct. *Id.* The employee in *Wirig* did not recover under both claims because she could not show by clear and convincing proof that the misconduct forming the basis of the $100,000 punitive damage award in the battery action was different in kind from the misconduct forming the basis of the $6,000 punitive damage award in the sexual harassment claim. *Id.* As a result, we determined that the claims were not "different in kind" because the claims could not be asserted independently, and the employee's right to recover under her battery claim was denied to prevent two legal remedies for the same wrongful conduct. *Id.* at 377–79.

In addressing the two punitive damage awards in *Wirig*, we did not define "different in kind." But we noted that the difference in size between the punitive damages award under the MHRA claim ($6,000) and the punitive damages award under the tort claim ($100,000) was not clear and convincing proof that the claims were different in kind. *Id.* at 379. We stated that comparison of the amount of the damage awards "tells us little \* \* \*." In contrast to *Wirig*, in this case we do not have two duplicate awards for punitive damages. We only have one verdict against the sole remaining third-party defendant and a Rule 68 judgment against the employer and its

holding company without any designation of its effect other than the agreed upon dollar amount.

Similarly, in *Rosenbloom v. Flygare*, 501 N.W.2d 597 (Minn.1993), there were two awards for punitive damages, one for $65,000 for willful indifference and the other for $6,000 for unfair discriminatory practices. In *Rosenbloom*, we explained that Wirig fell short in meeting her burden of proof, and we did not find the proof offered on the battery and the sexual harassment different enough to justify two separate awards of punitive damages. *Id.* at 600.

We then examined the claims at issue in *Rosenbloom* and determined that the battery claim was actionable independent of its racial motivation because the claim was based on the plaintiff's physical injuries. *Id.* at 600. We examined the MHRA claim and determined that it was based on racial epithets and was actionable regardless of the racial animus. *Id.* Thus, the plaintiff could recover punitive damages under both claims because the wrongful conduct forming the basis of each claim was "different in kind." *Id.* We also examined the compensatory damages that were detailed on a special verdict form and determined that the plaintiff did not receive a double recovery because the compensatory damages were limited to the battery claim. *Id.* However, we were concerned about the method used to assert and resolve the punitive damage claims. *Id.* Rather than order a new trial, we directed the district court to reduce the punitive damage award in the battery action to $30,000. *Id.* at 602.

We applied the same reasoning in *Vaughn v. Northwest Airlines, Inc.* when we were asked to determine whether the plaintiff's common law tort claim survived preemption by the MHRA. 558 N.W.2d 736, 737 (Minn.1997). The defendant in *Vaughn* argued essentially the same theory as Johnson argues in the instant case-that *Wirig* precludes a double recovery when the same set of operative facts forms the basis for parallel MHRA and tort claims. *Id.* at 745. However, in *Vaughn* we specifically rejected Johnson's argument and clarified *Wirig* stating "[although] we held [in *Wirig* ] that the MHRA's prohibition against workplace sexual harassment *did not preempt a factually parallel common-law battery claim* [,] * * * we foreclosed double recovery for conduct giving rise to more than one claim." *Id.* at 744–45 (emphasis added). The plaintiff in *Vaughn* was allowed to maintain and recover damages under parallel MHRA and tort claims because the alleged tort was actionable independent of the discrimination. *Id.*

■ In the instant case, Swisher's MHRA claim against the Bank and DBI is based on sexual harassment that occurred while she was employed by the Bank, which was controlled by DBI. It included a statutory claim for attorney fees that was disposed of by the acceptance of the Rule 68 offer. *See* Minn.Stat. § 363.14, subd. 3 (2000). In contrast, Swisher's intentional infliction of emotional distress and assault and battery claims against Johnson are based on actual, physical, and emotional injuries without any claim for attorney fees. Therefore, there was no evidence presented about attorney fees in the remaining causes of action against Johnson because Swisher's intentional tort claims are based on actual, physical, and emotional injuries and did not contain the element of damage related to attorney fees. Swisher did submit her attorney's time records in response to post-trial motions. While the dollar amount of the fees was not included, the records indicated that 456 hours had been expended prior to trial. The Bank's and DBI's further liability for

attorney fees that could be incurred through trial was also eliminated by Swisher's acceptance of the Rule 68 offer. Accordingly, there were different claims and ample consideration for the Rule 68 offer without determining the actual amount of attorney fees.

Furthermore, this is not a situation as in *Pacific Indem. Co.* where a joint and several judgment against a joint tortfeasor requires a pro tanto reduction in liability of the joint tortfeasors by the amount paid by one tortfeasor. 260 N.W.2d at 558. At the time Swisher accepted the Rule 68 offer of judgment, the district court had already dismissed her negligent infliction of emotional distress claim against the Bank and DBI and her MHRA claims against Johnson, but it had not dismissed Swisher's MHRA claim against the Bank and DBI, which was based on sexual harassment. Swisher's other claims that survived summary judgment against the Bank and DBI for assault and battery and intentional infliction of emotional distress were based on theories of vicarious liability or were direct claims of negligent retention and supervision without a joint liability component. Accordingly, there were no joint and several common law tort claims remaining against the Bank or DBI.

In regard to Swisher's second MHRA claim against the Bank and DBI based on aiding and abetting Johnson's wrongful conduct, the court's order simply noted "that [the court] did not find an aiding and abetting [sic] under the MHRA claim made against Mark Johnson. Therefore, [the court] did not rule on this issue."

Even if this statutory aiding and abetting claim against the Bank and DBI survived summary judgment, under the MHRA, the Bank and DBI as employers were the alleged wrongdoers, even though it was Johnson's wrongful conduct that forms the basis of Swisher's aiding and abetting claim against the Bank and DBI. However, the aiding and abetting claim was disposed of by Swisher's acceptance of the Rule 68 offer of judgment. Furthermore, an aiding and abetting claim under the MHRA, which Swisher asserted, is based on intentional acts. *See* Minn.Stat. § 363.03, subd. 6. In contrast, Minnesota's comparative fault statute applies when the fault is based on "acts or omissions that are in any measure negligent or reckless * * *." *See* Minn.Stat. § 604.01, subd. 1a; *Florenzano v. Olson*, 387 N.W.2d 168, 175 (Minn.1986) (stating "[w]ithout question, principles of comparative negligence would not apply to an intentional tort; we have never so applied them"). As a result, under this record, Swisher is entitled to recover damages under her intentional tort claims against Johnson as the sole alleged intentional tortfeasor without having the jury verdict reduced by the Rule 68 judgment.

■ Finally, nothing further was specified in regard to the offer of judgment as to its effect other than the payment of money. As with any settlement, we must examine it on a case-by-case basis and assess its validity and effect. *Pacific Indem. Co.*, 260 N.W.2d at 558. On this record, the offer of judgment upon acceptance becomes merely a contractual agreement between the offeror and offeree with no intent expressed about any right to offset or reduction or release, which would pass the direct benefit of this settlement onto the remaining nonsettling defendant. There was no secrecy surrounding the settlement and it did not act to prejudice the rights of the nonparties. It is not for the courts to speculate or to create uncertainty about the effect of Rule 68 offers of judgment when they are free from ambiguity. Moreover, in this case we are not, as in *Wirig* or *Rosenbloom,* confronted with two separate awards for punitive damages aris-

ing out of the same cause of action. We conclude that the tort claims Swisher asserted against Johnson are different enough from her employment-related claims brought pursuant to the MHRA to justify a separate award of damages against the remaining defendant Johnson. Accordingly, we hold that the lower courts erred when they applied the Rule 68 judgment against the jury verdict.

Reversed and remanded.