Angela COLLINS, et al., Respondents,

v.

MINNESOTA SCHOOL OF BUSINESS, INC., Petitioner, Appellant.

No. C7–01–690.

Supreme Court of Minnesota.

Jan. 16, 2003.

John G. Westrick, Tammy L. Merkins, Westrick & McDowall–Nix, PLLP, St. Paul, MN, for Appellants.

Mark V. Steffenson, Scott A. Wold, Henningson & Snoxell, Ltd., Brooklyn Center, MN, for Respondent.

Heard, considered, and decided by the court en banc.

## OPINION

ANDERSON, PAUL H., Justice.

Respondents Angela Collins and 17 other former students of the Minnesota School of Business's (MSB) Sports Medicine Technician program brought both common law and statutory claims against MSB. They alleged that MSB made false, misleading, and confusing statements about its sports medicine program. Four days before trial, respondents accepted MSB's Rule 68 offer of judgment for $200,000 "together with any costs and disbursements allowed by the District Court." Respondents subsequently applied to the district court for costs and disbursements, including attorney fees, under the private attorney general statute, Minn.Stat. § 8.31. The court awarded respondents $7,088.75 in costs and disbursements, but denied any attorney fees on the ground that respondents' claims did not benefit the public. The court of appeals reversed and awarded attorney fees concluding that (1) the offer of judgment was enforceable, (2) respondents qualified as prevailing parties under the private attorney general statute, and (3) respondents' claims benefited the public. We affirm and remand.

The Minnesota School of Business is a private post-high school educational institution offering one and two-year programs in the fields of business, medicine, and computers. It offers its programs to the general public and as of 1998, it had a total enrollment of over 1,200 students. As required by Minn.Stat. § 141.25, subd. 1 (2002), MSB was licensed by the Minnesota Higher Education Service Office (HESO). In 1995, MSB launched its Sports Medicine Technician program. The program was approved by HESO. MSB publicized the program by airing a television advertisement that depicted an aerobics class, a whirlpool, a person on a treadmill, and a person receiving treatment. The advertisement announced that, "[i]n today's active society the need for qualified sports medicine technicians continues to grow rapidly." MSB also made numerous sales and informational presentations to prospective students and provided students with a "Career Opportunities" sheet, listing jobs for which students might qualify after completing the program.

In the spring of 1996, students learned that the Career Opportunities sheet listed jobs that did not exist and that a "sports medicine technician" was not a position or title commonly recognized in the sports medicine field. Students then complained to MSB. In its response to student complaints, MSB maintained that it never intended the Career Opportunities sheet to correspond with formal job titles; rather, it was intended to represent, describe, and identify the types of activities students would be qualified to perform after completing the program.

In the spring and summer of 1997, MSB revised its curriculum. HESO approved the curriculum changes. After implementing the curriculum changes, MSB decided to change the name of its program to "Health and Exercise Sciences." In a letter to HESO, MSB's director of medical education requested approval for the name change and explained the change by stating that "[the new] name more closely reflects the content of the revised curriculum without the myriad difficulties associated with the current name." HESO approved the name change.

At about the same time, in February 1997, respondents commenced this action.

They brought both common law and statutory claims. The common law claims included fraud, negligent misrepresentation, and breach of contract. The statutory claims alleged violations of the deceptive trade practices statute, Minn.Stat. § 325D.44 (2002), the false statement in advertising statute, Minn.Stat. § 325F.67 (2002), and the prevention of consumer fraud act, Minn.Stat. § 325F.68–.70 (2002). In March 1998, respondents amended their complaint by adding three additional plaintiffs.

MSB answered, asserting that the action was an educational malpractice claim, which is not recognized in Minnesota. MSB also counterclaimed against two respondents alleging interference with contractual relations and prospective business relationships. Both sides made summary judgment motions. Respondents moved for summary judgment on the three statutory claims and to dismiss MSB's counterclaims. They also moved to add a claim for punitive damages. MSB moved to dismiss all of respondents' claims primarily on the basis that the action was for educational malpractice.

Addressing respondents' motion for summary judgment on the statutory claims, the district court found that a genuine issue of fact existed as to whether the television advertisement and the Career Opportunities sheet were sufficiently misleading to allow for recovery, and denied the motion. The court also denied MSB's motion for summary judgment and respondents' motion for punitive damages. MSB voluntarily withdrew the counterclaim against one respondent, and the court granted the other respondent's motion to dismiss the counterclaim against her.

On October 27, 2000, MSB made a $90,000 offer of judgment under the provisions of Minn. R. Civ. P. 68. Respondents' trial counsel asserts that during a telephone conversation he told MSB's counsel that "based on the language of the offer, I believed Plaintiffs had the right to request an award of attorney fees as part of the costs and disbursements to be added to the amount of the offer." On October 31, MSB increased the offer to $150,000. Respondents countered with a $355,000 offer. Then, on November 1, five days before trial was to commence, MSB made its final Rule 68 offer. The offer of judgment provided in relevant part "judgment to be entered in favor of Plaintiffs and against Defendant in the sum of Two Hundred Thousand and no hundredths Dollars ($200,000.00) together with any cost and disbursements allowed by the District Court." In an affidavit, MSB's counsel asserted that when he made this offer, he notified respondents' attorney that MSB "would not pay a penny over $200,000." The next day, respondents accepted the $200,000 offer and subsequently filed the offer and notice of acceptance with the court.

On January 4, 2001, respondents filed an application for an award of costs and disbursements requesting $7,088.75 for costs and disbursements and $128,832 in attorney fees under Minn.Stat. § 8.31, subd. 3a (2002), the private attorney general statute. The district court awarded respondents $7,088.75 in costs and disbursements, but denied attorney fees on the ground that respondents' claims did not benefit the public. When denying attorney fees, the court relied on *Ly v. Nystrom,* 615 N.W.2d 302, 314 (Minn.2000), in which we held that the private attorney general statute could be invoked to award attorney fees only if the claims benefited the public. The court concluded that respondents' statutory claims did not benefit the public because the persons allegedly

harmed by MSB's activities was a "relatively small group."

Respondents appealed the district court's denial of attorney fees, arguing that their statutory claims did benefit the public. In response, MSB argued that the offer of judgment was not enforceable because MSB did not intend for its offer to include attorney fees. MSB also argued that respondents were not entitled to recover attorney fees because they did not prevail on their statutory claims. The court of appeals reversed, holding that the offer of judgment did not operate to exclude attorney fees and that it was enforceable. *Collins v. Minnesota Sch. of Bus., Inc.*, 636 N.W.2d 816, 819 (Minn.App. 2001). The court also concluded that respondents were prevailing parties on all of their claims. Finally, the court held that respondents' statutory claims did benefit the public. The court then remanded the case to the district court for a determination of reasonable attorney fees.

MSB petitioned this court for review, arguing that respondents are not entitled to attorney fees because for purposes of Minn. R. Civ. P. 68 "costs and disbursements" in an offer of judgment never include attorney fees. On review, we consider three issues: (1) whether "costs and disbursements" in a Rule 68 offer of judgment can include attorney fees; (2) whether respondents prevailed on their statutory claims; and (3) whether respondents' statutory claims benefited the public.

I.

■ The determination of whether an award of attorney fees is proper involves an interpretation of Minn. R. Civ. P. 68. We review legal determinations regarding Minn. R. Civ. P. 68 offers of judgment de novo. *Farmer's State Bank of Darwin v. Swisher*, 631 N.W.2d 796, 799 (Minn.2001).

■ Rule 68 provides that

any party may serve upon an adverse party an offer to allow judgment to be entered to the effect specified in the offer or to pay or accept a specified sum of money, with costs and disbursements then accrued, either as to the claim of the offering party against the adverse party or as to the claim of the adverse party against the offering party.

Minn. R. Civ. P. 68. If the offer is accepted, either party may file the offer with the district court and the court administrator shall enter judgment. If the offer is rejected and the final judgment entered is not more favorable to the offeree than the offer, the offeree must pay the offeror's costs and disbursements. This cost-shifting mechanism was designed to encourage settlement and decrease litigation. *Swisher*, 631 N.W.2d at 799; 2A David F. Herr & Roger S. Haydock *Minnesota Practice* § 68.3 (3d ed.1998). While the rule speaks in terms of costs and disbursements, it does not specifically address whether attorney fees are included in costs and disbursements.

Our most recent decision addressing the issue of attorney fees in the context of Rule 68 is *Bucko v. First Minnesota Sav. Bank*, 471 N.W.2d 95, 98 (Minn.1991). MSB argues that respondents are not entitled to an award of attorney fees as part of costs and disbursements because under *Bucko*, Rule 68 costs and disbursements can never include attorney fees. In contrast, respondents argue that the issue addressed in *Bucko* is distinct from the issue presented here. Thus, we must first determine whether *Bucko* precludes an award of attorney fees as part of costs and disbursements in a Rule 68 offer of judgment.

In *Bucko*, three plaintiffs, Bucko, Jaskowiak, and Crace, filed suit against First Minnesota Savings Bank under Minnesota's polygraph statute. *Id.* at 97. The polygraph statute prohibits employers

from soliciting or requiring polygraph tests of their employees. It also awards prevailing parties "costs and disbursements" and defines "costs and disbursements" to include attorney fees. Minn. Stat. § 181.75, subd. 4 (2002). First Minnesota made a Rule 68 offer of judgment of $5,000 to each plaintiff. *Bucko*, 471 N.W.2d at 97. All three plaintiffs rejected the offer, and the case was tried before a jury. The jury awarded compensatory damages as follows: Bucko $800, Jaskowiak $3,500, and Crace $0. The jury also awarded each plaintiff $33,333.33 in punitive damages. All three plaintiffs applied for and were awarded "trial costs" and attorney fees.

On appeal, First Minnesota argued that none of the plaintiffs were entitled to an award of costs and attorney fees because the offer of judgment exceeded the amount of compensatory damages recovered by each plaintiff. *Id.* at 98. However, we held that, when punitive damages were considered, each of the total judgments entered for Bucko and Jaskowiak exceeded First Minnesota's offer of judgment. We then concluded that Bucko and Jaskowiak were entitled to costs and disbursements under the polygraph statute. Addressing the issue of attorney fees, we held that Bucko and Jaskowiak's rejection of the Rule 68 offer did not alter their entitlement to recover attorney fees under the polygraph statute. First, the polygraph statute defined costs and disbursements to include attorney fees. Second, each of the total judgments entered for Bucko and Jaskowiak exceeded First Minnesota's offer of judgment; therefore, the Rule 68 cost-shifting mechanism was not triggered.

Turning to Crace, we concluded that because Crace received $0 in compensato-ry damages, she was not entitled to punitive damages. Thus, we concluded that the $5,000 Rule 68 offer to Crace was more favorable than the final judgment. Based on this result, we then concluded that under Rule 68's cost-shifting mechanism, Crace was responsible for paying First Minnesota the costs and disbursements it incurred defending against her action. *Id.* at 98. But we also concluded that First Minnesota's Rule 68 offer did entitle it to recover attorney fees from Crace as part of its costs and disbursements. *Id.* When reaching this conclusion, we stated that, "[f]or purposes of applying Minn. R. Civ. P. 68, 'costs' do not include attorney fees." *Id.* at 98. MSB relies on this language for its assertion that Rule 68 costs and disbursements do not include attorney fees.

■ Our holding in *Bucko* is not as broad as MSB contends. The polygraph statute the plaintiffs sued under in *Bucko* authorized an award of attorney fees as part of costs and disbursements to parties injured by a violation of the statute. Minn.Stat. § 181.75, subd. 4. The defendant, First Minnesota, did not qualify for attorney fees under the polygraph statute. Accordingly, while First Minnesota was entitled to recover its Rule 68 costs and disbursements, it was not entitled to attorney fees because it was not a party injured by a violation of the polygraph statute. Thus, when we stated that "[f]or purposes of applying Minn. R. Civ. P. 68, 'costs' do not include attorney fees," we meant that Rule 68 by itself does not authorize an award of attorney fees as part of costs and disbursements. Our holding in *Bucko* is that Rule 68 alone does not entitle a party who otherwise is not entitled to attorney fees to recover attorney fees as part of costs and disbursements.[1]

---

1. We note that this conclusion is also consistent with an earlier court of appeals case.

*See Koop v. Indep. Sch. Dist. No. 624,* 505 N.W.2d 93, 96 (Minn.App.1993) (holding that

Respondents contend that their case is distinguishable from *Bucko*. They claim that they accepted a Rule 68 offer of judgment awarding them "costs and disbursements" in addition to the $200,000 lump sum offer. Thus, they assert that the parties contemplated something more than $200,000 was payable as part of the settlement. They go on to assert that two of their statutory claims, false advertising, Minn.Stat. § 325F.67, and consumer fraud, Minn.Stat. § 325F.68–70, fall under the purview of the private attorney general statute, which includes attorney fees as part of costs and disbursements. Therefore, they claim that if they can prove that they were injured by violations under these two statutory claims, they are entitled to attorney fees as part of costs and disbursements. We agree with respondents' assertion that their case is factually distinguishable from *Bucko* and therefore our holding in *Bucko* is not dispositive.

■ Having concluded that *Bucko* is not dispositive, we must now address the primary issue before the court: whether costs and disbursements in an accepted Rule 68 offer can include attorney fees when the statute underlying the cause of action includes attorney fees in its definition of costs and disbursements. While we have not previously had the occasion to address this precise issue, we find instruction in the analysis provided by federal courts that have interpreted Fed.R.Civ.P. 68, a rule that is similar to our rule.[2] The United States Supreme Court has held

that for purposes of Fed.R.Civ.P. 68, "where the underlying statute defines 'costs' to include attorney's fees, we are satisfied such fees are to be included as costs for purposes of Rule 68." *Marek v. Chesny*, 473 U.S. 1, 9, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985). Although *Marek* involved the application of the cost-shifting mechanism where the plaintiff rejected the defendant's offer of judgment, a number of courts interpreting Fed.R.Civ.P. 68 have applied the holding in *Marek* to situations like the one here, where an offeree has accepted an offer of judgment. *See, e.g., Erdman v. Cochise County*, 926 F.2d 877, 879 (9th Cir.1991) (determining that under *Marek*, the plaintiff, who accepted an offer of judgment, was entitled to attorney fees as part of the costs and disbursements because the underlying statute defined costs and disbursements to include attorney fees).[3] We find the reasoning set forth in these federal cases to be persuasive.

Further, we conclude that the language of and the policy behind Rule 68 is consistent with the federal analysis and does not support MSB's argument that a Rule 68 offer can never include attorney fees. The language of the rule suggests that "costs and disbursements" in a Rule 68 offer of judgment are defined by the underlying statute. The 1985 advisory committee's note indicates that the costs shifted via the cost shifting-mechanism are those "costs properly taxable under Minn. R. Civ. P. 54.04." Rule 54.04 provides that "[c]osts

---

*Bucko* did not bar an award of attorney fees as part of Rule 68 costs to a plaintiff who accepted a Rule 68 offer when the statute underlying the claim defined costs to include attorney fees).

**2.** Fed.R.Civ.P. 68 provides, "a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the

money or property or to the effect specified in the offer, with costs then accrued."

**3.** *See also Webb v. James*, 147 F.3d 617, 622 (7th Cir.1998); *Arencibia v. Miami Shoes, Inc.*, 113 F.3d 1212, 1214 (11th Cir.1997); *Sas v. Trintex*, 709 F.Supp. 455, 458 (S.D.N.Y. 1989); *Rohrer v. Slatile Roofing and Sheet Metal Co.*, 655 F.Supp. 736, 738–39 (N.D.Ind. 1987).

and disbursements shall be allowed as provided by statute." Minn. R. Civ. P. 54.04. This language specifically provides that the underlying statute in an action defines what is included in costs and disbursements.

Finally, there are a number of statutes that specifically allow prevailing parties attorney fees as part of "costs and disbursements."[4] If we were to conclude that for purposes of Rule 68 costs and disbursements can never include attorney fees, parties bringing actions under such statutes would lose their rights to attorney fees simply because they accepted a Rule 68 offer of judgment. This result is contrary to Rule 68's purpose of encouraging settlement because it would deny attorney fees to parties who would otherwise be entitled to those fees under the statute that is the basis of their cause of action. Therefore, based on the language of Rule 68, policy considerations, and interpretation of the similarly worded federal rule, we conclude that when the statute that underlies the plaintiff's cause of action allows attorney fees as part of costs and disbursements, Rule 68 costs and disbursements can include attorney fees.

## II.

■ Having determined that Rule 68 costs and disbursements can under certain circumstances include attorney fees, we must now determine whether under the facts of this case respondents are entitled to an award of attorney fees. The determination of whether an award of attorney fees is proper involves interpreting Minn. R. Civ. P. 68 and Minn.Stat. § 8.31, subd.

3a. Therefore, we review this issue de novo. *Nystrom*, 615 N.W.2d at 307.

■ Respondents brought six claims, three of which were common law claims that do not authorize an award of attorney fees as part of costs and disbursements. The other three claims were statutory claims. Two of the three statutory claims, false advertising, Minn.Stat. § 325F.67, and consumer fraud, Minn.Stat. § 325F.68–70, fall under the private attorney general statute, which authorizes an award of attorney fees to injured parties. Nevertheless, MSB contends that attorney fees cannot be awarded because respondents' case involves a mixture of claims— two that authorize an award of attorney fees and four that do not. MSB argues that because it is impossible to determine with certainty whether respondents prevailed on their statutory claims, costs and disbursements should not include attorney fees. Therefore, the first step in this stage of our analysis will be to determine on which claims respondents prevailed.

The court of appeals concluded that respondents prevailed on all of their claims. Our analysis of whether the court of appeals reached the right conclusion is helped by an understanding of the reasoning in our most recent decision involving Rule 68—*Farmer's State Bank of Darwin v. Swisher*, 631 N.W.2d 796 (Minn.2001). In *Swisher*, Farmer's State Bank brought claims against Swisher, its former employee, to recover loans. Swisher brought multiple counterclaims against the bank and joined two third-party defendants. *Id.* at 797. The bank and one third-party

---

4. *See, e.g.*, Minn.Stat. § 8.31, subd. 3a (2002) (providing a civil remedy, including attorney fees as part of costs, for any person injured by a violation of laws the attorney general has the duty to investigate and enforce, as listed in subdivision 1); Minn.Stat. § 181.75, subd. 4 (2002) (providing an individual remedy, including attorney fees as part of costs, for individuals injured by a violation of the polygraph statute); Minn.Stat. § 363.14, subd. 3 (2002) (providing costs, including attorney fees, to parties injured by a violation of the Minnesota Human Rights Act).

defendant made a Rule 68 offer of judgment proposing to settle all claims Swisher made against them. Swisher accepted the offer. *Id.* at 798. The Rule 68 offer did not provide for any offsets for judgments against the other third-party defendant. A jury trial was held on Swisher's claims against the other third-party defendant and the bank's claims against Swisher. The jury found in favor of Swisher and awarded her damages. The other third-party defendant moved for a reduction in the jury award equal to the Rule 68 offer of judgment.

In *Swisher*, we determined that once accepted, a Rule 68 offer of judgment becomes a contractual agreement between the parties. *Id.* at 801. We stated, "[i]t is not for the courts to speculate or to create uncertainty about the effect of Rule 68 offers of judgment when they are free from ambiguity." *Id.* Thus, we refused to read into the Rule 68 offer language that offset the offer against the subsequent jury award. In *Swisher*, because the language of the Rule 68 offer was unambiguous, we declined to interpret the offer to include language that was not clearly part of the offer.

We believe the approach adopted in *Swisher* is sound. Thus, we first look to the language of MSB's Rule 68 offer to ascertain whether it determines upon which claims respondents prevailed. This approach fosters the purposes behind Rule 68 by encouraging parties to make Rule 68 offers of judgment. It gives drafters of Rule 68 offers control over which claims they include in the offer, and encourages them to draft offers with precision. A Rule 68 offeree is potentially bound by the cost-shifting mechanism when she rejects the offer. In addition, the offeree has only 10 days to accept the offer. Thus, it is important that the terms of an offer be precise and clear so that the offeree can make an informed decision. *See Chambers v. Manning*, 169 F.R.D. 5, 8 (D.Conn. 1996). For this reason, federal courts have construed ambiguous language in the offer against the drafter. *See, e.g., Erdman v. Cochise County*, 926 F.2d 877, 880 (9th Cir.1991). Further, such an approach eliminates the need for district courts to engage in extensive fact finding to determine on which claims the claimant prevailed in the Rule 68 offer. Requiring courts to engage in such extensive, time-consuming fact finding would increase litigation and deter parties from making Rule 68 offers of judgment.

MSB's offer of judgment provided "judgment to be entered in favor of Plaintiffs and against Defendant." This language is free from ambiguity. The offer clearly entered judgment in favor of respondents and did not limit the offer so that judgment could be entered only on some claims. MSB could have drafted the offer to exclude some of the claims, i.e., the statutory claims, or to make the Rule 68 offer inclusive of attorney fees. It did not do so and we will not interpret the offer to include language that is not there. Respondent should not be penalized by MSB's failure to draft the offer of judgment differently.

We also agree with the court of appeals' conclusion that the district court record supports respondents' claim that they prevailed on all of their claims. *Collins*, 636 N.W.2d at 820. First, all of respondents' claims survived summary judgment. Second, the court entered judgment in favor of respondents, awarding them costs and disbursements totaling $7,088.75, without finding that respondents prevailed on only some of their claims. Finally, the court denied attorney fees on the basis that respondents' action did not benefit the public, not because they failed to prevail on their statutory claims. Therefore, we con-

clude that under the clear language of MSB's Rule 68 offer and the district court record, respondents prevailed on all of their claims.

■ We next consider whether respondents are entitled to attorney fees when only two of the six claims on which they prevailed allow attorney fees as part of costs and disbursements. The court of appeals determined that even though respondents prevailed on multiple claims and only some of those claims authorized an award of attorney fees, as prevailing parties they were entitled to an award of attorney fees under the private attorney general statute. *Id.* at 819. In concluding that respondents are entitled to attorney fees, the court of appeals relied on *Foster v. Kings Park Cent. Sch. Dist.*, 174 F.R.D. 19 (E.D.N.Y.1997). In *Foster,* the plaintiff brought multiple claims under the Americans with Disabilities Act (ADA), Rehabilitation Act of 1973, Age Discrimination in Employment Act, and related state law. *Id.* at 22. The plaintiff accepted an offer of judgment under Fed.R.Civ.P. 68 for $14,000, "together with costs accrued to date." *Id.* The plaintiff subsequently made a motion for attorney fees. *Id.* The district court found that although the ADA does not authorize an award of attorney fees as part of costs, under the Rehabilitation Act a prevailing party may be awarded attorney fees as part of costs. *Id.* at 24. Because one of multiple claims provided for an award of attorney fees, the court stated, "if the plaintiff is a prevailing party, and, the language of the accepted offer of judgment by its terms does not provide to the contrary, then he is entitled to a reasonable award of attorney's fees." *Id.*

The court went on to say:

[w]here there are multiple claims, only some of which give rise to a claim for attorney's fees, parsing out an appropriate fee award may prove difficult.

*Id.* at 25. The court then concluded that the plaintiff was entitled to an award of attorney fees. *Id.* at 26.

■ We agree with the court of appeals that *Foster* is instructive. First, it is factually similar to the instant case. Here, as in *Foster,* the respondents prevailed on a mixed-claim suit and accepted an offer of judgment that did not specify which claims the offer included and did not address the award of attorney fees. Second, as we noted above, the way courts interpret Fed. R.Civ.P. 68 is helpful because the rule is similar to Minnesota's Rule 68. We also agree that where there are multiple claims and only some allow for an award of attorney fees, parsing out an appropriate fee award may prove difficult. Therefore, we hold that respondents are entitled to seek reimbursement for reasonable attorney fees.

### III.

■ Our conclusion that respondents prevailed on all of their claims and that they can recover attorney fees even though they brought mixed claims does not end our discussion. We must also determine whether respondents' claims benefited the public as required by *Ly v. Nystrom,* 615 N.W.2d 302, 314 (Minn. 2000). Here, we are interpreting the public benefit standard articulated in *Nystrom* to determine whether respondents' lawsuit benefited the public. The appropriate standard of review for this issue involving the application of existing case law is de novo. *Hibbing Educ. Ass'n v. Pub. Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn.1985).

In *Nystrom,* we held that the private attorney general statute applies only to claimants who demonstrate that their claims benefit the public. *Nystrom,* 615 N.W.2d at 314. In *Nystrom,* the plaintiff

brought an action under the Consumer Fraud Act and sought attorney fees under the private attorney general statute. *Id.* at 307. The defendant made numerous fraudulent representations concerning its restaurant business, but only made the representations directly to the plaintiff. *Id.* at 305–06. Emphasizing that the misrepresentations were made to only one person and that the fraudulent transaction was completed on a one-on-one basis, we concluded that the plaintiff did not demonstrate that his claim was in the public interest. *Id.* at 314.

Applying *Nystrom,* the district court found that only a relatively small group of persons were injured by MSB's fraudulent activities; thus, respondents failed to demonstrate a public benefit. In determining whether respondents' claims benefited the public, the court focused on the number of "persons who were injured." In doing so, the court misapplied the holding in *Nystrom* by ignoring the fact that MSB misrepresented the nature of its program to the public at large.

MSB offered its programs to the general public and as of 1998, MSB had a total enrollment of over 1,200 students in all of its programs. Moreover, as required by statute, MSB was licensed by HESO and it sought approval from HESO before changing the curriculum and name of its sports medicine program. When it launched its program, it made misrepresentations to the public at large by airing a television advertisement. MSB also made numerous sales and information presentations and provided students with a "Career Opportunities" sheet, which students interpreted as a list of jobs for which they might qualify after completing the program. All of these factors indicate that MSB presented its program to the public at large. We hold that respondents' successful prosecution of their claims benefited the public and therefore respondents are entitled to reasonable attorney fees.

## IV.

■■■■ MSB makes an alternative, equitable argument in support of its position that its offer should not include attorney fees. It asserts that it did not contemplate that its offer included attorney fees as part of costs and disbursements and, therefore, it should not now be required to pay attorney fees. Drafters of Rule 68 offers can avoid ambiguity by drafting the offer to either explicitly include or exclude attorney fees. As stated earlier, as a matter of policy, we encourage drafters of Rule 68 offers to draft these offers with precision. Federal courts have required drafters to clearly express that attorney fees are included in the lump sum of the offer; otherwise, the offeree, if the underlying statute allows it, is entitled to recover attorney fees. *See, e.g., Foster v. Kings Park Cen. Sch. Dist.,* 174 F.R.D. 19, 24–25 (E.D.N.Y. 1997). The reasoning of the federal courts is persuasive and we conclude that if MSB did not intend to be liable for attorney fees, it should have drafted the offer with greater precision. Therefore, we conclude that MSB's equitable argument lacks merit.

We remand to the district court for a determination of the amount of reasonable attorney fees to be awarded respondents.

Affirmed and remanded.