**SELECT COMFORT CORPORATION,**
Plaintiff,

v.

**TEMPUR SEALY INTERNATIONAL, INC., d/b/a/ Tempur–Pedic; and Mattress Firm Holding Corp., d/b/a Mattress Firm, Defendants.**

**Civil No. 13–2451 (DWF/SER).**

United States District Court,
D. Minnesota.

Signed April 8, 2014.

Andrew S. Hansen, Esq., Dennis E. Hansen, Esq., Samuel R. Hellfeld, Esq., and Elizabeth A. Patton, Esq., Oppenheimer Wolff & Donnelly LLP, counsel for Plaintiff.

Arthur S. Beeman, Esq., Matthew Wright, Esq., and Pamela M. Deese, Esq., Arent Fox LLP; and John W. Ursu, Esq., Robert J. Gilbertson, Esq., and X. Kevin Zhao, Esq., Greene Espel PLLP, counsel for Defendant Tempur Sealy International, Inc., d/b/a Tempur–Pedic.

Brian D. Roche, Esq., Jennifer DePriest, Esq., and Vanessa Marti Heftman, Esq., Reed Smith LP; and David T. Schultz, Esq., and Nadege J. Souvenir, Esq., Maslon Edelman Borman & Brand, LLP, counsel for Defendant Mattress Firm Holding Corp., d/b/a Mattress Firm.

## MEMORANDUM OPINION AND ORDER

DONOVAN W. FRANK, District Judge.

### INTRODUCTION

This matter is before the Court on Defendant Mattress Firm Holding Corp.'s, d/b/a Mattress Firm ("Mattress Firm" or "Defendant") Motion to Dismiss Counts Four, Five and Six of Plaintiff Select Comfort Corporation's ("Select Comfort" or "Plaintiff") First Amended Complaint ("Amended Complaint"). (Doc. No. 27.) The Court grants Defendant's Motion to Dismiss for the reasons below.

### BACKGROUND

Select Comfort designs, manufactures, and markets mattresses and bedding products. (Doc. No. 8, Am. Compl. ¶ 9.) Select Comfort sells products under the Sleep Number® brand, which is trademarked under uncontested registrations, and includes the Sleep Number bed. (Id. ¶¶ 9–10.) Select Comfort also owns the registered trademark Select Comfort®. (Id. ¶ 11.) Select Comfort sells its products nationwide at Select Comfort retail stores, through direct marketing operations, and through the Select Comfort websites at selectcomfort.com and sleepnumber.com. (Id. ¶ 14.)

Select Comfort alleges that it has an excellent reputation for its unique and superior quality products and services. (Id. ¶ 13.) Select Comfort also alleges that it undertakes widespread advertising to assist in developing its reputation and goodwill for its products. (Id. ¶¶ 15–18.) Select Comfort alleges that it was ranked the number one bedding retailer in the United States for nine consecutive years. (Id. ¶ 13.)

Mattress Firm is a retail seller of mattresses in the United States that sells a number of different mattress brands. (Id. ¶ 3.) Mattress Firm is one of the largest multi-brand mattress specialty retailers in the United States, and operated 857 stores in the United States as of January 2012. (Id.) Mattress Firm sells Tempur–Pedic products, and previously sold Select Comfort products. (See id. ¶¶ 34, 48–49.)

Select Comfort alleges that Mattress Firm uses its significant market presence to disseminate false advertisements and misrepresentations about Select Comfort and its products to consumers through its hundreds of stores and employees. (Id. ¶¶ 35–54, 59–64, 66–83.) Select Comfort alleges that Mattress Firm has made at least the following false and disparaging comments: (1) Select Comfort's warranty is shorter than it actually is; (2) Sleep Number beds are defective and Mattress Firm stopped selling them as a result; (3) Select Comfort does not honor its warranty; (4) Sleep Number beds grow mold; (5) Sleep Number beds are made from "cheap," "commodity" foam; (6) Sleep Number beds suffer from "hammocking"; and (7) a number of class action lawsuits are pending against Select Comfort. (Id. ¶¶ 35–37, 39, 41, 47–49, 50–51, 53.) Select Comfort alleges that these statements are made purposefully so as to prevent customers from purchasing Select Comfort's products. (Id. ¶¶ 34–54.) Select Comfort asserts that these ongoing activities are currently harming its sales, reputation, and goodwill. (See, e.g., id. ¶¶ 91, 102, 107.)

Select Comfort also alleges that Mattress Firm undertakes improper actions with respect to Select Comfort's trademarks in order to deceive consumers. (Id. ¶¶ 35–37, 39, 41, 47 –49, 50–1, 53.) For example, Select Comfort asserts that through the use of internet advertising, Mattress Firm associates its own website with the phrase "Sleep Number," though it

does not sell Sleep Number beds. (*Id.* ¶¶ 57, 59–61.) Select Comfort also claims that Mattress Firm improperly uses Select Comfort trademarks in paid Google advertisements, by the manipulation of organic searches in Google, and in paid advertising in conjunction with third-party shopping sites. (*Id.* ¶¶ 57–83.)

Select Comfort alleges that Mattress Firm specifically directs the above to consumers and the general public. (*Id.* ¶¶ 6, 8, 35–41, 46–48, 50–54, 57, 59–64, 68–86, 88, 92, 95, 99–100, 108, 110, 113–14.) Select Comfort also alleges that actual consumer confusion exists, that consumers have been misled, and that consumers have suffered irreparable injury as a result of the above. (*Id.* ¶¶ 84–85, 113.) Further, Select Comfort alleges that all of the above injures the public and consumers because it creates an inability for those customers to make accurate and informed purchasing decisions. (*Id.* ¶¶ 108.) Finally, Select Comfort alleges that it has lost sales as a result of the above. (*Id.* ¶¶ 87, 105–108, 112.)

In its Amended Complaint, Select Comfort asserts twelve claims against Mattress Firm.[1] In this motion, Mattress Firm solely moves to dismiss Counts Four, Five, and Six of Plaintiff's Complaint. Counts Four, Five, and Six relate to the following,

respectively: violations of the Minnesota Unlawful Trade Practices Act ("MUTPA"), violations of the Minnesota False Statement in Advertising Act ("MFSAA"), and violations of the Minnesota Consumer Fraud Act ("MCFA"). Each of these claims is brought under the Private Attorney General Statute, Minn.Stat. § 8.31.

Defendant moves to dismiss these counts, alleging that Plaintiff fails to meet the requirements of the Minnesota Private Attorney General Statute. Specifically, Defendant argues that Select Comfort's allegations relate only to how Select Comfort itself will be harmed, and do not show a "public benefit," either direct or collateral, as required by statute. (Doc. No. 29, at 4.) Select Comfort, however, argues that because it seeks to enjoin Mattress Firm from making false advertisements and misrepresentations to consumers nationwide, there is a clear public benefit. (Doc. No. 34, at 3.)

## DISCUSSION

### I. Legal Standard

 In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from

---

**1.** In its First Amended Complaint, Select Comfort asserts the following claims:

(1) unfair competition in violation of 15 U.S.C. § 1125(a); (2) false advertising in violation of 15 U.S.C. § 1125(a); (3) deceptive trade practices in violation of the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44 *et seq.;* (4) unlawful trade practices in violation of the Minnesota Unlawful Trade Practices Act, Minn.Stat. § 325D.09 *et seq.;* (5) false statements in advertising in violation of the Minnesota False Statement in Advertising Act, Minn.Stat. § 325F.67; (6) consumer fraud in violation of the Minnesota Consumer Fraud Act, Minn.Stat. § 325F.69; (7) unjust enrichment; (8) unfair competition constituting product disparagement; (9) de-

ceptive trade practices by product disparagement in violation of the Minnesota Uniform Deceptive Trade Practices Act, Minn.Stat. § 325D.44, subd. 1(8); (10) business defamation; (11) tortious interference with prospective economic advantage; and (12) trademark infringement in violation of 15 U.S.C. § 1114(1) (the "Lanham Act"). (Am. Comp. ¶¶ 115–142.)

Select Comfort has also brought suit against Tempur Sealy International, Inc., d/b/a Tempur–Pedic ("Tempur–Pedic"), however only Mattress Firm moves to dismiss at this time. Select Comfort asserts all of its claims against both Defendants except Counts Ten and Twelve, which were brought solely against Mattress Firm.

those facts in the light most favorable to the complainant. *Morton v. Becker,* 793 F.2d 185, 187 (8th Cir.1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens,* 183 F.3d 799, 805 (8th Cir.1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir.1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555, 127 S.Ct. 1955. As the United States Supreme Court recently reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly.* *Ashcroft v. Iqbal,* 556 U.S. 662, 663, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955.

## II. Minnesota Private Attorney General Statute

■ Under Minn.Stat. § 8.31, a private litigant that is injured by violations of Minnesota laws "respecting unfair, discriminatory, and other unlawful practices in business, commerce, or trade" can assert a cause of action. Minn.Stat. § 8.31, subd. 3a, subd. 1. Minnesota laws covered by this provision include MUTPA, MFSAA, and MCFA. *Id.,* subd. 1. The parties agree that to successfully assert such a cause of action, a plaintiff must allege that the action has a "public benefit." (Doc. No. 29 at 4; Doc. No. 34 at 9); *Ly v. Nystrom,* 615 N.W.2d 302, 314 (Minn.2000) ("[T]he Private AG Statute applies only to those claimants who demonstrate that their cause of action benefits the public.").

■ While the "public benefit requirement is not onerous," *Blue Cross & Blue Shield of Minn.,* 2012 WL 1343147, at *5 (D.Minn. Apr. 18, 2012), it is "a necessary element of a plaintiff's cause of action" under the statute. *Buetow v. A.L.S. Enter. Inc.,* 888 F.Supp.2d 956, 960 (D.Minn.2012). "Minnesota courts have not definitively delineated what factors are necessary to establish a public benefit[.]" *Id.* However, generally, courts examine "the degree to which the defendants' alleged misrepresentations affected the public; the form of the alleged misrepresentation; the kind of relief sought; and whether the alleged misrepresentations are ongoing." *Khoday v. Symantec Corp.,* 858 F.Supp.2d 1004, 1017 (D.Minn. 2012) (citing *In re Levaquin Prods. Liab. Litig.,* 752 F.Supp.2d 1071, 1077–79 (D.Minn.2010)). In their analysis, "[courts] hone in on 'the relief sought' by the plaintiff." *Buetow,* 888 F.Supp.2d at 960 (citations and quotations omitted). "Where plaintiffs seek only damages, courts typically find no public benefit.... Nonetheless, the lack, or inclusion, of a prayer for injunctive relief is not dispositive." *Select Comfort v. Sleep Better Store, LLC,* 796 F.Supp.2d 981, 986

(D.Minn.2011) (citing *In re Levaquin*, 752 F.Supp.2d at 1077). Finally,

> [a]lthough there exists no hard-and-fast rule, a public benefit typically will be found when the plaintiff seeks relief primarily aimed at altering the defendant's conduct (usually, but not always, through an injunction) rather than seeking remedies for past wrongs (typically through damages). This is because individual damages, generally speaking, merely enrich (or reimburse) the plaintiff to the defendant's detriment; they do not advance the public interest.

*Buetow*, 888 F.Supp.2d at 960.

█ Plaintiff primarily argues that it has adequately stated a public benefit because its claims address false advertising to the general public. Indeed, a number of courts have held that "there is a public benefit in eliminating false or misleading advertising." *Kinetic Co. v. Medtronic, Inc.*, 672 F.Supp.2d 933, 946 (D.Minn. 2009); *Olivares v. PNC Bank*, Civ. No. 11–1626, 2011 WL 4860167, at *8 (D.Minn. Oct. 13, 2011) ("[C]laims benefit the public when misleading statements or deceptive trade practices are directed to the 'public at large.' "). Here, however, Plaintiff's allegations that its claims address false advertising to the general public are not enough to establish a public benefit.

First, while courts have found a public benefit for claims "eliminating false or misleading advertising," they have not held that this establishes a *per se* public benefit. Instead, courts consider the elimination of false advertising as one factor in favor of finding a public benefit, but have also regularly found this to be insufficient to establish a public benefit. *See, e.g., Select Comfort*, 796 F.Supp.2d at 986–87 (holding that claims of misleading advertising to the general public *support* plaintiff's claim that it alleged a public benefit, but that plaintiff still failed to sufficiently allege a public

benefit); *see also Baker v. Best Buy Stores, LP*, 812 N.W.2d 177, 183 (Minn. App.2012) (holding that the complaint "was devoid of any allegations" that the action benefits the public, though there were allegations of misleading public advertising regarding a service contract plan for televisions); *Pecarina v. Tokai Corp.*, Civ. No. 01–1655, 2002 WL 1023153, at *5 (D.Minn. May 20, 2002) (finding that plaintiffs failed to demonstrate a public benefit even though they alleged false advertising perpetrated to the consuming public with respect to faulty lighters). Thus, to the extent that Plaintiff attempts to hang its hat solely on the fact that its claims will address or eliminate false or misleading advertising, Plaintiff's claims fail.

Similarly, in *Collins v. Minn. Sch. of Bus., Inc.*, 636 N.W.2d 816 (Minn.App. 2001), *aff'd* 655 N.W.2d 320 (Minn.2003), the case upon which Plaintiff largely bases its arguments, the Minnesota Supreme Court only viewed "eliminating false or misleading advertising" as one factor. In *Collins*, former students of the Minnesota School of Business alleged that they enrolled in the school's sports medicine program as a result of false, misleading, and confusing statements by the school about the program. *Collins*, 655 N.W.2d at 322. The Court held that when the defendant aired television advertisements and made a number of sales presentations, along with the high enrollment in the school and the number of people that could enroll, the defendant had "presented its program to the public at large" and the plaintiff's claims established a public benefit. *Id.* at 330. Here, Plaintiff's claim relies on alleged misleading advertising, but fails to show that it reaches or affects the public to the same extent and in the same way as in *Collins*. Thus, *Collins* is distinguishable and Plaintiff fails to show a public benefit in this case.

Second, Plaintiff has failed to make sufficient allegations in this case to show a public benefit. Plaintiff makes only general and conclusory allegations that the public would benefit from its action. Plaintiff points to the following allegations to show it has adequately alleged a public benefit: (1) "Mattress Firm routinely disseminates false and misleading advertising to consumers nationwide"; (2) Mattress Firm's advertising "has caused and continue to cause harm to ... consumers"; (3) consumers have been "misled," "deceived," and "confused"; (4) consumers "relied on" Mattress Firm's misrepresentations" which have caused "irreparable injury"; and (5) Mattress Firm's actions were "directed to the public at large and Minnesota consumers." (Doc. No. 34, at 13–14 (citing Am. Compl. ¶¶ 6, 8, 35–41, 46–48, 50–54, 57, 59–64, 68–86, 88, 92, 95, 99–100, 110, 113–14, 123, 126, 129).) These allegations may demonstrate that Defendants have presented false and misleading advertising to consumers and the public, and that they have also made conclusory allegations of "harm," but they fail to address how or why there is any public benefit to the action now before the Court. In *Select Comfort*, the court held that "Select Comfort's argument that it has alleged a public benefit is belied by the Complaint's scant reference to either *public harms or the effect of the alleged misrepresentations* on the public." *Select Comfort*, 796 F.Supp.2d at 987 (emphasis added). The same is true here.[2] The Amended Com-

plaint in this case reveals that the harm suffered by consumers is the potential of ending up with a product that is not a Select Comfort product. Thus, the Court concludes that such a claim cannot support a public benefit.

Select Comfort's sole allegation with respect to a public benefit is that Mattress Firm's "acts ... have violated or injured the public's and consumers' ability to make accurate and informed purchasing decisions free from false, misleading, deceptive, and unfair representations and trade practices." (Am. Compl. ¶ 108.) But, this statement alone does not sufficiently address the way in which the public is harmed and can benefit from Plaintiff's action. At best, Plaintiff alleges an attenuated collateral benefit to consumers by virtue of ensuring that they are informed and able to make the most accurate purchasing decision. *Select Comfort*, 796 F.Supp.2d at 987 (holding that the injuries alleged were "too attenuated to permit recovery"). The real harm alleged here is Select Comfort's loss of sales, goodwill, and reputation. (Am. Compl. ¶¶ 46, 68, 72, 86, 87, 96 (referring to how Defendants' actions "divert business" from Select Comfort).) This is not the type of harm or benefit contemplated by the Private Attorney General statute. The essence of Plaintiff's lawsuit in this case is not curbing false advertising and sales for the public benefit, but instead, like in *Select Comfort*, relates to how Defendant's actions harms Select Comfort's own reputation and sales

---

**2.** Plaintiff attempts to distinguish this case from *Select Comfort* by stating that these allegations are far more comprehensive and detailed than those presented in *Select Comfort*. However, the Court finds that Plaintiff's attempt to distinguish *Select Comfort* is unavailing. In *Select Comfort*, Select Comfort sued the Sleep Better Store alleging a number of the same claims as alleged in this case, including violations of the MFSAA, MUTPA, and MCFA. *Select Comfort*, 796 F.Supp.2d at

983. Specifically, Select Comfort alleged that Sleep Better maintained a website that created misleading comparisons to Select Comfort products, made false claims about the origins of its products, and diverted customers to purchase beds from Sleep Better. *Id.* at 984. The allegations in this case, like those in *Select Comfort*, include that misleading advertising harmed consumers, but Plaintiff still fails to address how or why its claims would confer any public benefit.

and will "redress [Plaintiff's] commercial losses rather than vindicate harm to the public." *Select Comfort*, 796 F.Supp.2d at 987; *Pecarina*, 2002 WL 1023153, at *5 (holding that although claims involved false advertising "the essence" of the lawsuit was personal injury relating to injuries suffered as a result of defendant's faulty lighter). Indeed, this Court agrees with the court in *Select Comfort* that in this case "a merchant competitor is not affected in the same way as the public" in claims where the plaintiff and defendant "are direct competitors and claims for relief are almost entirely for damages caused by dilution of [Plaintiff's] trademark and lost profits." *Select Comfort*, 796 F.Supp.2d at 986. The harm to the general public and the harm to Select Comfort as alleged in the Amended Complaint are not the same.[3]

Finally, Plaintiff argues that because it seeks to alter Defendant's conduct and because it seeks to enjoin Defendant from continuing its false advertising and marketing, its allegations clearly establish a public benefit. However, this cannot save Plaintiff's Private Attorney General claims. The relief Plaintiff seeks is not "primarily aimed at altering the defendant's conduct," *Buetow*, 888 F.Supp.2d at 960, or enjoining the defendant's behavior, but is to require "a payment of damages ... all profits and/or ill-gotten gains made by Defendants as a result of the acts complained of herein" (Am. Compl., at 43.). Thus, the Court finds that despite the fact that Plaintiff seeks an injunction, Plaintiff has alleged

insufficient facts to establish a public benefit. Plaintiff's Counts Four, Five, and Six are therefore properly dismissed.

### ORDER

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss Counts Four, Five, and Six of Plaintiff's First Amended Complaint (Doc. No. [27]) is **GRANTED,** and

2. Counts Four, Five, and Six are hereby **DISMISSED WITH PREJUDICE.**

---

**3.** Additionally, this case is distinguishable from cases where a public benefit has been found to exist because those cases involve either a danger to the public, inducing consumers to buy products they do not need, or defrauding consumers. *See, e.g., Kinetic Co. v. Medtronic, Inc.*, 672 F.Supp.2d 933 (2009) (holding that the case "easily discerns a public benefit" based on allegations relating to 87,000 implanted defibrillators with potential-

ly lethal defects and where misrepresentations and omissions were made to the public at large and not disclosed to the FDA); *see also In re Levaquin Prods. Liab. Litig.*, 752 F.Supp.2d at 1078 (finding a public benefit existed in a class action concerning a dangerous drug that was marketed to the public without warnings). This case does not address these types of issues and thus cannot establish a public benefit.